# EXHIBIT "A"

PRIVATE PROCESS

Case Number: 2016-CI-13713

2016CI13713   S00001

COASTAL TRANSPORT CO INC
VS.
LEXINGTON INSURANCE COMPANY ET AL
(Note:Attached Document May Contain Additional Litigants.)

IN THE DISTRICT COURT
288th JUDICIAL DISTRICT
BEXAR COUNTY, TEXAS

## CITATION

"THE STATE OF TEXAS"
Directed To: LEXINGTON INSURANCE COMPANY
          BY SERVING COUNSEL, LEGAL DEPARTMENT



RECEIVED
AUG 29 2016
LEGAL DEPARTMENT

"You have been sued. You may employ an attorney. If you or your attorney do not file a written answer with the clerk who issued this citation by 10:00 a.m. on the Monday next following the expiration of twenty days after you were served this citation and petition, a default judgment may be taken against you." Said petition was filed on the 15th day of August, 2016.

ISSUED UNDER MY HAND AND SEAL OF SAID COURT ON THIS 17TH DAY OF AUGUST A.D., 2016.

PETITION

SEAN E BREEN
ATTORNEY FOR PLAINTIFF
1900 PEARL ST
AUSTIN, TX 78705-5408

**Donna Kay McKinney**
Bexar County District Clerk
101 W. Nueva, Suite 217
San Antonio, Texas 78205

By: *Laura Ann Rodriguez,* Deputy

---

### OFFICER'S RETURN

I received this citation on _____ at _____o'clock ___M. and:( ) **executed** it by delivering a copy of the citation with the date of delivery endorsed on it to the defendant,_____ in person on the _____ at _____o'clock ___M. at:_____ or ( ) **not executed** because _____, Fees:_____ Badge/PPS #:_____ Date certification expires:_____

_____County, Texas

By:_____
OR:   VERIFICATION  OF  RETURN  (If  not  served  by  a  peace  officer)  SWORN  TO  this
_____, _____.

_____
NOTARY PUBLIC, STATE OF TEXAS

OR:   My  name  is_____,  my  date  of  birth  is_____,  and  my address  is  _____,  _____(County). I  declare  under  penalty  of  perjury  that  the  foregoing  is  true  and  correct.  Executed  in _____County, State of Texas, on the _____ day of_____, 20_____.

AIG Property Casualty
Claims Legal

SEP 0 1 2016

RECEIVED

_____
Declarant
RETURN TO COURT (DK002)

FILED
8/15/2016 6:24:44 PM
Donna Kay McKinney
Bexar County District Clerk
Accepted By: Maria Jackson

CIT/PPS SAC 3

CAUSE NO. **2016CI13713**

| | | |
|---|---|---|
| COASTAL TRANSPORT CO., INC., | § | IN THE DISTRICT COURT |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| vs. | § | |
| | § | |
| LEXINGTON INSURANCE COMPANY; | § | OF BEXAR COUNTY, TEXAS |
| and GLENN HOLLMULLER, | § | |
| | § | |
| *Defendants.* | § | **288** TH JUDICIAL DISTRICT |

## PLAINTIFF'S ORIGINAL PETITION, REQUESTS FOR DISCLOSURE, AND JURY DEMAND

Plaintiff Coastal Transport Co., Inc. (Coastal), files this original petition, requests for disclosure, and jury demand, complaining of Defendants Lexington Insurance Company (Lexington) and Glenn Hollmuller, and for cause of action would respectfully show as follows:

### I.   INTRODUCTION

1.     Despite specifically acknowledging that Coastal's facilities in Abilene, Texas, suffered hail damage, and in the face of an independently commissioned engineering report that reached the same conclusion, Lexington breached its insurance contract with Coastal by refusing to accept and pay Coastal's claim for weather-related damage to its buildings and other property.

2.     Lexington and Mr. Hollmuller's refusal to make a good-faith effort to settle Coastal's claim even after Lexington's liability was reasonably clear also subjects Defendants to liability under Texas's common-law and statutory provisions that protect insureds from unfair claim settlement practices.

3.     Lexington and Mr. Hollmuller refused Coastal the help it bargained for when Coastal purchased its insurance policy, which makes them liable under Texas law for breaching

A
I
G

O
L
0
0
3
:
s
e
s
s

1

9
/
1
/
2
0
1
6

an insurance contract and bad-faith insurance settlement practices.

## II.   DISCOVERY CONTROL PAN

4.     Coastal requests that discovery be conducted under Discovery Control Plan Level 3, as set forth in Rule 190.4 of the Texas Rules of Civil Procedure.

## III.   PARTIES

5.     Plaintiff Coastal Transport Co., Inc., is a Texas corporation with its principal office at 1603 Ackerman Road, San Antonio, Bexar County, Texas 78219.

6.     Defendant Lexington Insurance Company is a foreign insurance carrier authorized to conduct business in Texas and, upon information and belief, is organized and existing under the laws of the State of Delaware.  Under the terms of the insurance policy in question, Lexington may be served with process in two ways: (1) by service on Counsel, Legal Department, for Lexington Insurance Company, at 99 High Street, Boston, Massachusetts 02110; or (2) service on the Texas Commissioner of Insurance, at 333 Guadalupe Street, Austin, Texas 78701, who should then mail service to the address listed above.[1]

7.     Defendant Glenn Hollmuller is an individual.  Upon information and belief, Mr. Hollmuller resides in Texas, and his place of business is 4251 FM 2181, Suite 230, #203, Corinth, Texas 76210.  He may be served with process through personal service upon him at his residence, his place of business, or wherever he may be found.

## IV.   JURISDICTION AND VENUE

8.     This Court has jurisdiction over this lawsuit because the amount in controversy exceeds this Court's jurisdictional requirements.  Further, and as required by Rule 47(c) of the Texas Rules of Civil Procedure, Coastal states it is seeking monetary relief over $1 million.

---

[1] *See* Policy, attached as Exhibit A, at Standard Property Conditions (form PR9019), at 1–2.

9.      This Court has general personal jurisdiction over each defendant because they reside in the State of Texas, maintain places of business in the State of Texas, and/or have continuous and systematic contacts with the State of Texas.

10.     In the alternative, this Court also has specific personal jurisdiction over each defendant because Coastal's claims against each of them arise from and are directly related to actions each defendant took in the State of Texas.  Specifically, Lexington, through the insurance policy in question, has agreed to make a general appearance in a Texas court for actions arising out of that policy.  Mr. Hollmuller conducted business with a Texas resident regarding an insurance policy that was obtained to provide coverage to a Texas company that was operating in Texas and with assets located in Texas.

11.     Venue is proper in Bexar County, Texas, under Section 15.002(a)(1) of the Texas Civil Practice & Remedies Code because all or a substantial part of the events or omissions giving rise to Coastal's claims occurred in Bexar County.  Specifically:

- Coastal's principal office in this state during the events in question was located in Bexar County;

- The information provided by Coastal on its commercial insurance application was gathered and composed at Coastal's office in Bexar County; and

- A large portion of the communications or negotiations between Coastal and Lexington occurred or originated in Bexar County.

12.     Where venue is proper against one defendant, venue is proper against any other defendant for claims arising out of the same transaction, occurrence, or series of transactions or occurrences.[2]  Venue is therefore proper in Bexar County as to all defendants.

13.     This suit is not eligible for removal to federal court under 28 U.S.C. § 1441 and 28

---

[2] *See* Tex. Civ. Prac. & Rem. Code § 15.005.

A
I
G

O
L
0
0
3
:
s
e
s
s

1

9
/
1
/
2
0
1
6

U.S.C. § 1332 based on diversity jurisdiction because both Coastal and Mr. Hollmuller are citizens of Texas.[3]

## V.   BACKGROUND

14.     Coastal is an oil-and-gas transportation company headquartered in San Antonio, Texas. As part of that business, it owns and operates facilities across the State of Texas and throughout the southwestern United States.

15.     One of those facilities is 1733 & 1733A East Highway 80, Abilene, Texas 79601. It consists of several buildings situated on more than seven acres.

16.     Like most companies, Coastal carries insurance to cover unexpected events that may damage its property or interrupt its operations. As of June and July 2014, that insurance was provided by Lexington, under policy number 019946713, with a policy period of May 1, 2014, to May 1, 2015 (the Policy). A copy of the Policy is attached to this original petition as Exhibit A.

17.     On or about July 7, 2014, Coastal discovered that at least two of its buildings at the facility in Abilene had sustained what appeared to be weather-related damages. Water had entered one or more of the buildings over the weekend, flooding several of Coastal's offices. A subsequent investigation found damage throughout the property: on the buildings' roofs, overhangs, walls, air conditioning units, and other portions of the buildings.

18.     Coastal immediately and timely notified its insurance broker, Hub International, to begin the process of submitting a claim to Lexington and cooperating with any requests or investigation Lexington required to adjust the claim.

19.     Upon information and belief, Lexington assigned Mr. Hollmuller to adjust Coastal's claim on Lexington's behalf. Shortly after receiving that assignment, Mr. Hollmuller

---

[3] *See* 28 U.S.C. § 1441(b)(2).

- 4 -

A
I
G

O
L
O
O
3
:
s
e
s
s

1
9
/
1
/
2
0
1
6

informed Coastal representatives that a hailstorm had occurred in and around Abilene on June 12, 2014.

20.     On or about July 21, 2014, Mr. Hollmuller and a consultant Lexington hired inspected Coastal's facilities in Abilene.  Though the consultant concluded Coastal's buildings had been struck by hailstones measuring at least one inch in diameter, and possibly more, it decided these large hailstones did not cause most of the damage present on Coastal's buildings.  These findings were contained in a report dated July 30, 2014, prepared by Lexington's consultant.

21.     On August 13, 2014, Mr. Hollmuller issued a letter on Lexington's behalf accepting in part and declining in part Coastal's claim for the damages it had suffered.  A copy of this letter is attached to this original petition as Exhibit B.

22.     In that August 13 letter, Mr. Hollmuller asserted Lexington was declining coverage for the vast majority of the damage Coastal suffered because Lexington believed that damage was not caused by the June 12, 2014 hailstorm or another weather-related event.  Instead, Lexington asserted the damage was due to a combination of standing water on a roof, wear and tear, and inadequate maintenance.  There was no assertion that Coastal had failed to timely submit its claim, that it had failed to cooperate in Lexington's investigation, or any other policy-based reason for the denial.

23.     Coastal initially accepted Lexington's and Mr. Hollmuller's conclusion at face value.  But in soliciting bids in 2014 and 2015 to perform the repairs Lexington would not cover, multiple contractors repeatedly analyzed the cause of Coastal's damages as hail.  One contractor even commissioned an engineering report in February 2016 that explained how hail had caused the uncompensated damage to Coastal's buildings.

- 5 -

24.     Despite this evidence, Lexington and Mr. Hollmuller continued to unreasonably refuse to accept and pay Coastal's insurance claim.  Instead, Lexington and Mr. Hollmuller hired a second consultant in April 2016 to "re-inspect" Coastal's buildings and—unsurprisingly—that second consultant "reached" the same conclusions as Lexington's first consultant.

25.     Coastal fulfilled its end of the insurance bargain: it paid its policy premium, timely notified Lexington of its claim, and cooperated with Mr. Hollmuller while Lexington investigated and adjusted the claim.  Lexington and Mr. Hollmuller, however, did not; despite convincing evidence to the contrary, they have repeatedly denied Coastal's insurance claim even after their liability was reasonably clear.

## VI.     CAUSES OF ACTION

### A.     Breach of contract against Lexington

26.     Coastal incorporates the preceding paragraphs and the allegations they contain as if completely set forth herein.

27.     On or about May 1, 2014, Coastal and Lexington executed a valid and enforceable written contract, the Policy.  A copy of the Policy has been attached to this original petition as Exhibit A.

28.     The Policy's number is 019946713, and the policy period is May 1, 2014, until May 1, 2015.  The Policy requires Lexington to, among other things, pay Coastal for damage to covered property that is caused by or results from a covered loss.

29.     Coastal performed its contractual obligations under and is not in breach of the Policy.

30.     Lexington, however, has materially breached the Policy.  Specifically, Lexington has wrongfully refused to issue payment on a timely and properly submitted claim for a covered

- 6 -

loss to Coastal's property.

31.     Lexington's material breach has caused Coastal injury as described above.  These injuries include, but are not limited to, the uncompensated loss of hundreds of thousands of dollars in damage to Coastal's property.

32.     Coastal seeks unliquidated damages within the jurisdictional limits of this Court.

33.     Attorney's fees.  Coastal is entitled to recover reasonable attorney's fees under Section 38.001(8) of the Texas Civil Practice & Remedies Code because this suit is for breach of a written contract.  Coastal retained counsel, who presented its claim to Lexington.  Lexington did not tender the amount owed within 30 days of when the claim was presented.

**B.      Breach of the duty of good faith and fair dealing against Lexington**

34.     Coastal incorporates the preceding paragraphs and the allegations they contain as if completely set forth herein.

35.     Coastal was an insured under an insurance contract issued by Lexington, the Policy, which gave rise to a duty of good faith and fair dealing.

36.     Lexington breached the duty by denying payment of a covered claim when Lexington knew or should have known its liability under the Policy was reasonably clear.

37.     Lexington's breach of duty proximately caused injury to Coastal, which resulted in the following damages: the uncompensated loss of hundreds of thousands of dollars in damage to Coastal's property.

38.     Lexington seeks unliquidated damages within the jurisdictional limits of this Court.

39.     Exemplary damages. Coastal suffered injury independent of the loss of Policy benefits, and that injury resulted from Lexington's gross negligence, malice, or actual fraud, which

A
I
G

O
L
O
O
3
:
S
e
s
s

1
9
/
1
/
2
0
1
6

entitles Coastal to exemplary damages under Section 41.003(a) of the Texas Civil Practice & Remedies Code.

## C.   Deceptive insurance practices against all defendants

40.    Coastal incorporates the preceding paragraphs and the allegations they contain as if completely set forth herein.

41.    Coastal is a corporation that is an insured under the Policy.

42.    Lexington is a corporation engaged in business of insurance. Mr. Hollmuller is an individual insurance adjuster engaged in the business of insurance.

43.    Coastal gave all defendants written notice of its claim at least 60 days before filing suit, as required by Section 541.154 of the Texas Insurance Code. All defendants were on written notice no later than August 2014 that Coastal was unsatisfied with Defendants' actions and was contemplating legal action.

44.    In the alternative, and to the extent Defendants deny the effect or nature of Coastal's written notice, it was not required to provide Defendants with written notice of its claim under Section 541.154(c) of the Texas Insurance Code because the statute of limitations was about to run.

45.    Defendants' acts or practices violated multiple provisions of the Texas Insurance Code, including, but not limited to, unfair settlement practices, in violation of Section 541.060.

46.    Defendants' acts or practices were a producing cause of injury to Coastal, which resulted in the following damages: it has incurred hundreds of thousands of dollars in damages to real and personal property it owns and it has not been compensated through an insurance policy that should have covered those losses.

47.    Coastal seeks unliquidated damages within the jurisdictional limits of this Court.

A
I
G

O
L
0
0
3
:
s
e
s
s

1
9
/
1
/
2
0
1
6

48.     <u>Additional damages.</u>   Defendants acted knowingly, which entitles Coastal to recover treble damages under Section 541.152(b) of the Texas Insurance Code.

49.     <u>Attorney's fees.</u>   Coastal is entitled to recover its reasonable and necessary attorney's fees under Section 541.152(a)(1) of the Texas Insurance Code.

## VII.   CONDITIONS PRECEDENT

50.     All conditions precedent to Coastal's right to recover have occurred, have been fully performed, or have been waived.

## VIII.   TOLLING OF LIMITATIONS

51.     Coastal specifically pleads and invokes the discovery rule and fraudulent concealment should any defendant attempt to argue any or all of Coastal's claims are barred by any statute of limitations.

## IX.   REQUESTS FOR DISCLOSURE

52.     Pursuant to Rule 194 of the Texas Rules of Civil Procedure, all defendants are requested to disclose, within the time required by Rule 194.3, the information or material described in Rule 194.2.

## X.   JURY DEMAND

53.     Coastal hereby demands a trial by jury.   The proper fee for a jury trial is being tendered with this original petition.

## XI.   CONCLUSION AND PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiff Coastal Transport Co., Inc., requests that Defendants be cited to appear and answer, and that upon final trial of this cause, Coastal has judgment against Defendants in the form of the following relief:

1. Actual damages;

- 9 -

2. Additional damages;

3. Exemplary damages;

4. Attorney's fees;

5. Prejudgment and post-judgment interest at the highest rate permitted by law;

6. Costs of court;

   and

7. Any other and further relief, at law or in equity, to which Coastal may be justly entitled.

Dated: August 15, 2016                    Respectfully submitted,

                                          HOWRY BREEN & HERMAN, L.L.P.

                                          Sean E. Breen
                                          State Bar No. 00783715
                                          sbreen@howrybreen.com
                                          James Hatchitt
                                          State Bar No. 24072478
                                          jhatchitt@howrybreen.com
                                          1900 Pearl Street
                                          Austin, Texas 78705-5408
                                          Tel. (512) 474-7300
                                          Fax (512) 474-8557

                                          *Attorneys for Plaintiff Coastal Transport Co., Inc.*

- 10 -

AIG OL003:Sess 19/1/2016

# EXHIBIT A

A
I
G

O
L
O
O
3
:
S
e
s
s

1
9
/
1
/
2
0
1
6

# LEXINGTON INSURANCE COMPANY

Administrative Offices: 99 High Street, Boston, Massachusetts 02110
(hereinafter called the Company)

## COMMERCIAL PROPERTY POLICY
## DECLARATIONS

POLICY NUMBER:  019946713                    RENEWAL OF:  019946713

ITEM 1.     Named Insured:  COASTAL TRANSPORT CO, INC.

           Address:     1603 ACKERMAN ROAD
                      SAN ANTONIO, TX 78219

ITEM 2.     Policy Period:
           From 05/01/2014        To 05/01/2015
           at 12:01 A.M. Standard Time at the address of the named insured shown above.

ITEM 3.     Limit of Insurance:
           $5,000,000 PER OCCURRENCE, SUBJECT TO POLICY LIMITS


           Total Premium        $86,126     Minimum Earned Premium       $30,144

ITEM 4.     Perils:
           SPECIAL FORM PERILS, EXCLUDING FLOOD AND EARTHQUAKE EXCEPT AT 1214 S. 51ST
           AVENUE, PHOENIX, AZ. EQUIPMENT BREAKDOWN & TERRORISM ARE EXCLUDED.

ITEM 5.     Description of Property Covered:                              Coinsurance
           REAL & PERSONAL PROPERTY, ACCOUNTS RECEIVABLE, VALUABLE PAPERS       NIL


ITEM 6.     Mortgagee Clause: Loss, if any shall be payable to:


ITEM 7.     Forms Attached:
           See attached forms schedule

                                 **Authorized Representative OR**
                           **Countersignature (in states where applicable)**

PRPDEC (Ed.01/91)
LX1119

**FORMS SCHEDULE**

Named Insured:   COASTAL TRANSPORT CO, INC.

Policy No: 019946713                                          Effective Date:   05/01/2014

| Form Number | Edition Date | Endorsement Number | Title |
|---|---|---|---|
| PRPDEC | 01/91 | | PROPERTY DEC |
| PR9015 | 08/06 | | POLLUTION CONTAMINATION FORM |
| PR9014 | 08/06 | | OCCURRENCE LIMIT OF LIABILITY |
| PR9019 | 01/94 | | STANDARD PROPERTY CONDITIONS |
| CP1030 | 07/88 | | CAUSES OF LOSS SPECIAL FORM |
| PR4225 | 07/13 | | ECONOMIC SANCTIONS ENDORSEMENT |
| | | 002 | ADDITIONAL NAMED INSURED |
| | | 003 | Add Accounts Receivable |
| CP0010 | 07/88 | | BUILDING & PP COVERAGE FORM |
| PR9025 | 09/92 | | EARTHQUAKE ENDORSEMENT |
| PR9026 | 09/92 | | FLOOD ENDORSEMENT |
| LX9512 | 08/02 | | MOLD/FUNGUS EXCLUSION |
| PR9514 | 09/02 | | PROPERTY ENDORSEMENT |
| CP0121 | 07/88 | | STANDARD FIRE POLICY PROVISION |
| Y69859 | 02/98 | | PROPERTY MILLENNIUM END |
| CP0405 | 07/88 | | ORDINANCE OR LAW COVERAGE |
| LX9506 | 12/01 | | BUSINESS INCOME AND EXTRA EXP |
| PR9017 | 01/91 | | REPLACEMENT COST COVERAGE ENDT |
| PR8543 | 11/09 | | TERRORISM PREM CHARGE W/EXCL |
| | | 001 | ADDITIONAL TERMS & CONDITIONS |

DOC018(Ed.12/87)
LX0295

# POLICYHOLDER NOTICE

Thank you for purchasing insurance from a member company of American International Group, Inc. (AIG). The AIG member companies generally pay compensation to brokers and independent agents, and may have paid compensation in connection with your policy. You can review and obtain information about the nature and range of compensation paid by AIG member companies to brokers and independent agents in the United States by visiting our website at www.aig.com/producercompensation or by calling 1-800-706-3102.

91222 (4/13)

A
I
G

O
L
O
O
3
:
S
e
s
s
.
1

9
/
1
/
2
0
1
6

## POLLUTION, CONTAMINATION, DEBRIS REMOVAL
## EXCLUSION ENDORSEMENT

1. **Property Not Covered**

   This policy does not cover land, land values or water.

2. **Pollution and Contamination Exclusion.**

   This policy does not cover loss or damage caused by, resulting from, contributed to or made worse by actual, alleged or threatened release, discharge, escape or dispersal of CONTAMINANTS or POLLUTANTS, all whether direct or indirect, proximate or remote or in whole or in part caused by, contributed to or aggravated by any physical damage insured by this policy.

   Nevertheless, if fire is not excluded from this policy and a fire arises directly or indirectly from seepage or contamination or pollution, any loss or damage insured under this policy arising directly from that fire is insured, subject to the provisions of this policy.

   CONTAMINANTS or POLLUTANTS means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste, which after its release can cause or threaten damage to human health or human welfare or causes or threatens damage, deterioration, loss of value, marketability or loss of use to property insured hereunder, including, but not limited to, bacteria, virus, or hazardous substances as listed in the Federal Water, Pollution Control Act, Clean Air Act, Resource Conservation and Recovery Act of 1976, and Toxic Substances Control Act or as designated by the U. S. Environmental Protection Agency. Waste includes materials to be recycled, reconditioned or reclaimed.

   This exclusion shall not apply when loss or damage is directly caused by fire, lightning, aircraft impact, explosion, riot, civil commotion, smoke, vehicle impact, windstorm, hail, vandalism, malicious mischief. This exclusion shall also not apply when loss or damage is directly caused by leakage or accidental discharge from automatic fire protective systems.

3. **Asbestos, Dioxin or Polychlorinated Biphenols Exclusions**

   This policy does not cover -

   a) Asbestos, dioxin or polychlorinated biphenols (hereinafter all referred to as "Materials") removal from any good, product or structure unless the asbestos is itself damaged by fire, lightning, aircraft impact, explosion, riot, civil commotion, smoke, vehicle impact, windstorm or hail, vandalism, malicious mischief, leakage or accidental discharge from automatic fire protective system;

   b) Demolition or increased cost of reconstruction, repair, debris removal or loss of use necessitated by the enforcement of any law or ordinance regulating such Materials;

   c) Any governmental direction or request declaring that such Materials present in or part of or utilized on any undamaged portion of the insured's property can no longer be used for the purpose for which it was intended or installed and must be removed or modified.

   The exception to exclusion 3(a), above, does not apply to payment for the investigation or defense of any loss, damage or any undamaged portion of the insured's property can no longer be used for the purpose for which it was intended

4. **Debris Removal Exclusion**

   The Company will pay the expense within the sum insured to remove debris of insured property damaged or destroyed by an insured peril during the policy term.

   The Company will not pay the expense to:

   a) Extract contaminants or pollutants from the debris; or

   b) Extract contaminants or pollutants from land or water; or

c)   Remove, restore or replace contaminated or polluted land or water; or

d)   Remove or transport any property or debris to a site for storage or decontamination required because the property or debris is affected by pollutants or contaminants, whether or not such removal, transport, or decontamination is required by law or regulation.

It is a condition precedent to recovery under this extension that the Company shall have paid or agreed to pay for direct physical loss or damage to the property insured hereunder and that the Insured shall give written notice to the Company of intent to claim for cost of removal of debris or cost to clean up not later than 180 days after the date of such physical loss or damage.

5.   **Authorities Exclusion**

Notwithstanding any of the provisions of this policy, the Company shall not be liable for loss, damage, costs, expenses, fines or penalties incurred or sustained by or imposed on the Insured at the order of any Government Agency, Court or other Authority arising from any cause whatsoever.

## OCCURRENCE LIMIT OF LIABILITY ENDORSEMENT

It is agreed that the following special terms and conditions apply to this policy:

1. The limit of liability or Amount of Insurance shown on the face of this policy, or endorsed on this policy, is the total limit of the Company's liability applicable to each occurrence, as hereafter defined. Notwithstanding any other terms and conditions of this policy to the contrary, in no event shall the liability of the Company exceed this limit or amount irrespective of the number of locations involved.

   The term "occurrence" shall mean, any one loss, disaster, casualty, or series of losses, disasters, or casualties, arising out of one event.   When the term applies to loss or losses from the perils of tornado, cyclone, hurricane, windstorm, hail, flood, earthquake, volcanic eruption, riot, riot attending a strike, civil commotion, vandalism and malicious mischief, or terrorism, one event shall be construed to be all losses arising during a continuous period of 72 hours. When filing proof of loss, the insured may elect the moment at which the 72 hour period shall be deemed to have commenced, which   may not be earlier than the time when the first loss to covered property occurs.

2. The premium for this policy is based upon the Statement of Values provided to the insurer(s) by or on behalf of the insured and kept on file by the insurer(s).  In the event of loss under the policy, the liability of the insurer(s) shall be limited to the least of the following:

   a.) The actual adjusted amount of loss, less applicable deductible(s);

   b.) As respects each location insured by this Policy, ONE HUNDRED (100) percent of the total combined stated values for all categories of covered property (e.g. building, contents) and other covered exposures (e.g., business income, extra expense, rental loss), shown for that location on the latest statement of values or other documentation on file with the insurer.

   c.) Any other Limit of Liability or Sublimit of Insurance or Amount of Insurance specifically stated in this policy to apply to any particular insured loss or coverage or location.

A
I
G

O
L
O
O
3
:
S
e
s
s

1
9
/
1
/
2
0
1
6

## LEXINGTON INSURANCE COMPANY
### Standard Property Conditions

This endorsement effective 05/01/2014 forms a part of Policy Number 019946713

Issued to COASTAL TRANSPORT CO, INC.

by

    LEXINGTON INSURANCE COMPANY      (hereinafter called "the Company").

In consideration of the premium charged, the following clauses are hereby made applicable under this policy.

### MINIMUM EARNED PREMIUM CLAUSE

In the event of cancellation of this policy by the insured, a minimum premium of $30,144        shall become earned, any provision of the policy to the contrary notwithstanding.

Failure of the Insured to make timely payment of premium shall be considered a request by the Insured for the Company to cancel on the Insured's behalf. In the event of such cancellation for non-payment of premium, the minimum earned premium shall be due and payable; provided, however, such cancellation shall be rescinded if the Insured remits and the Company receives the full policy premium with 10 days after the date of issuance of the cancellation notice. Such remittance and acceptance by the Company shall not effect the minimum earned premium provision of this endorsement. In the event of any other cancellation by the Company, the earned premium shall be computed pro-rata, not subject to the minimum earned premium.

### POLICY DEDUCTIBLE

Each claim for loss or damage separately occurring shall be adjusted separately and from each such adjusted claim, the amount of $5,000        shall be deducted. Notwithstanding the foregoing, the deductible amount applying to certain peril(s) insured against by this policy shall be as follows:

    REFER TO POLICY      deductible applying to
                              deductible applying to
                              deductible applying to
                              deductible applying to
                              deductible applying to

In the event of any other insurance covering the property insured hereunder, whether or not concurrent, the deductible(s) specified herein shall apply in full against that portion of any claim for loss or damage which the Company is called upon to pay under the provisions of the Apportionment Clause irrespective of any provisions to the contrary of such other insurance.

### CANCELLATION CLAUSE

Except and to the extent of the Minimum Earned Premium Clause which is part of this policy, this clause supersedes other cancellation clauses made a part of this policy.

CANCELLATION: This policy may be cancelled by the Insured by surrender thereof to the Company or by mailing to the Company written notice stating when thereafter such cancellation shall be effective. This policy may be cancelled by the Company by mailing to the Insured, at the mailing address shown in this policy or last known address, written notice, stating when, not less than 60    days thereafter (10 days for non-payment of premium) such cancellation shall be effective. The effectiveness of cancellation is not dependent on the return of unearned premium with the notice. Proof of mailing of notice as aforesaid shall be sufficient proof of notice. The effective date and hour of cancellation stated in the notice shall become the end of the policy period. Delivery of such written notice either by the Insured or the Company shall be equivalent to mailing. If the Insured cancels, earned premium shall be computed in accordance with the customary short rate table and procedure. If the Company cancels, earned premium shall be computed pro rata. Premium adjustment shall be made as soon as practicable after cancellation becomes effective.

### SERVICE OF SUIT CLAUSE

Service of Suit: In the event of failure of the Company to pay any amount claimed to be due hereunder, the Company, at the request of the Insured, will submit to the jurisdiction of a court of competent jurisdiction within the United States. Nothing in this condition constitutes or should be understood to constitute a waiver of the Company's rights to commence an action in any court of competent jurisdiction in the United States to remove an action to a United States District Court or to seek a transfer of a case to another court as permitted by the laws of the United States or of any state in the United States. It is further agreed that service or process in such suit may be made upon Counsel, Legal Department, Company stated on Declarations, 99 High Street, Boston, Massachusetts 02110, or his or her representative, and that in any suit instituted against the Company upon this policy, the Company will abide by the final decision

1 of 2

PR9019 (Ed.01/94)
LX1101

A
I
G
O
L
0
0
3
:
S
e
s
s
1
9
/
1
/
2
0
1
6

of such court or of any appellate court in the event of an appeal.

Further, pursuant to any statute of any state, territory, or district of the United States which makes provision therefor, the Company hereby designates the Superintendent, Commissioner or Director of Insurance, other officer specified for that purpose in the statute, or his successor or successors in office as its true and lawful attorney upon whom may be served any lawful process in any action, suit, or proceeding instituted by or on behalf of the Insured or any beneficiary hereunder arising out of this policy of insurance and hereby designates the above named Counsel as the person to whom the said officer is authorized to mail such process or a true copy thereof.

## WAR RISK EXCLUSION CLAUSE

The Company shall not be liable for any loss, caused directly or indirectly, by (1) hostile or warlike action in time of peace or war, whether or not declared, including action in hindering, combating or defending against an actual, impending or expected attack (a) by government or sovereign power (dejure or de facto) or by any authority maintaining or using military, naval or air forces; or (b) by military, naval or air forces; or (c) by an agent of any such government, power, authority or force (2) any weapon of war employing atomic fission or radioactive force whether in time of peace or war, whether or not its discharge was accidental; (3) insurrection, rebellion, revolution, civil war, usurped power, or action taken by government authority in hindering, combating, or defending against such an occurrence, seizure or destruction; (4) any consequence of any of the foregoing.

## NUCLEAR EXCLUSION CLAUSE

The Company shall not be liable for loss by nuclear reaction or nuclear radiation or radioactive contamination all whether controlled or not, and whether such loss be direct or indirect, proximate or remote, or be in whole or in part caused by, contributed to, or aggravated by the peril(s) insured against in this policy. If the peril of fire is insured under this policy, then, subject to the foregoing and all provisions of this policy, direct loss by fire resulting from nuclear reaction or nuclear radiation or radioactive contamination is insured against by this policy.

## SALVAGE AND RECOVERY CLAUSE

All salvages, recoveries and payments recovered or received either prior or subsequent to a loss settlement under this policy shall be applied as if recovered or received prior to the said settlement and all necessary adjustments shall be made by the parties hereto, including deduction of the Company's cost of recovery or salvage.

## REPORTING CLAUSE

Notwithstanding that the Insured may be obligated to report full values for premium purposes, the Company's maximum limit of liability shall not exceed that amount stated as the policy limit of liability.

## PROOF OF LOSS AND PAYMENT

The Insured shall complete and sign a sworn proof of loss within ninety (90) days after the occurrence of a loss (unless such period be extended by the written agreement of the Company) stating the time, place and cause of loss, the interest of the Insured and of all others in the property, the sound value thereof and the amount of loss or damage thereto, and all other insurance thereon. All adjusted claims shall be due and payable thirty (30) days after the presentation and acceptance of satisfactory proof(s) of loss at the office of the Company at Lexington Insurance Company, c/o ACPC, P.O. Box 2310, Alpharetta, GA 30009, Claim reporting information can also be found on our website, www.lexingtoninsurance.com.

## GOVERNMENT ACTIVITY CLAUSE

The Company shall not be liable for loss or damage caused by or resulting from: (1) the seizure or destruction of property insured by this policy by any government body, including any customs or quarantine action, or (2) confiscation or destruction of any property by order of any government or public authority, except an order to destroy property to prevent the spread of fire or explosion.

IN WITNESS WHEREOF, the Company has caused this policy to be executed and attested, but this policy shall not be valid unless countersigned in the Declarations by one of its duly authorized representatives.

Secretary                          President

PR9019 (Ed.01/94)
LX1101

2 of 2

A
I
G

O
L
O
O
3
:
S
e
s
s

1
9
/
1
/
2
0
1
6

## CAUSES OF LOSS - SPECIAL FORM

Words and phrases that appear in quotation marks have special meaning. Refer to Section F. - Definitions.

**A.   COVERED CAUSES OF LOSS**

When Special is shown in the Declarations, Covered Causes of Loss means RISKS OF DIRECT PHYSICAL LOSS unless the loss is:

1.   Excluded in Section B., Exclusions; or

2.   Limited in Section C., Limitations;

that follow.

**B.   EXCLUSIONS**

1.   We will not pay for loss or damage caused directly or indirectly by any of the following. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss.

   a.   Ordinance or Law

      The enforcement of any ordinance or law:

      1)   Regulating the construction, use or repair of any property; or

      2)   Requiring the tearing down of any property, including the cost of removing its debris.

   b.   Earth Movement

      1)   Any earth movement (other that sinkhole collapse), such as an earthquake, landslide, mine subsidence or earth sinking, rising or shifting. But if loss or damage by fire or explosion results, we will pay for that resulting loss or damage.

      2)   Volcanic eruption, explosion or effusion. But if loss or damage by fire, building glass breakage or volcanic action results, we will pay for that resulting loss or damage.

      Volcanic action means direct loss or damage resulting from the eruption of a volcano when the loss or damage is caused by:

      a)   Airborne volcanic blast or airborne shock waves;

      b)   Ash, dust or particulate matter; or

      c)   Lava flow.

      All volcanic eruptions that occur within any one hundred sixty-eight (168) hour period will constitute a single occurrence.

      Volcanic action does not include the cost to remove ash, dust or particulate matter that does not cause direct physical loss or damage to the described property.

   c.   Governmental Action

      Seizure or destruction of property by order of governmental authority.

      But we will pay for acts of destruction ordered by governmental authority and taken at the time of a fire to prevent its spread, if the fire would be covered under this Coverage Part.

   d.   Nuclear Hazard

      Nuclear reaction or radiation, or radioactive contamination, however caused.

      But if loss or damage by fire results, we will pay for that resulting loss or damage.

1 of 7

Copyright, ISO Commercial Risk Services, Inc.

CP 1030(Ed.07/88)
LX1022

A
I
G

O
L
0
0
3
:
S
e
s
s

1

9
/
1
/
2
0
1
6

e.   Power Failure

The failure of power or other utility service supplied to the described premises, however caused, if the failure occurs away from the described premises.

But if loss or damage by a Covered Cause of Loss results, we will pay for that resulting loss or damage.

f.   War And Military Action

1)   War, including undeclared or civil war;

2)   Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

3)   Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

g.   Water

1)   Flood, surface water, waves, tides, tidal waves, overflow of any body of water, or their spray, all whether driven by wind or not;

2)   Mudslide or mudflow;

3)   Water that backs up from a sewer or drain; or

4)   Water under the ground surface pressing on, or flowing or seeping through:

a)   Foundations, walls, floors or paved surfaces;

b)   Basements, whether paved or not; or

c)   Doors, windows or other openings.

But if loss or damage by fire, explosion or sprinkler leakage results, we will pay for that resulting loss or damage.

2.   We will not pay for loss or damage caused by or resulting from any of the following:

a.   Artificially generated electric current, including electric arcing, that disturbs electrical devices, appliances or wires.

But if loss or damage by fire results, we will pay for that resulting loss or damage.

b.   Delay, loss of use or loss of market.

c.   Smoke, vapor or gas from agricultural smudging or industrial operations.

d.   1)   Wear and tear;

2)   Rust, corrosion, fungus, decay, deterioration, hidden or latent defect or any quality in property that causes it to damage or destroy itself;

3)   Smog;

4)   Settling, cracking, shrinking or expansion;

5)   Insects, birds, rodents or other animals;

6)   Mechanical breakdown, including rupture or bursting caused by centrifugal force; or

7)   The following causes of loss to personal property:

a)   Dampness or dryness of atmosphere;

b)   Changes in or extremes of temperature; or

Copyright, ISO Commercial Risk Services, Inc.

A
I
G
O
L
0
0
3
:
S
e
s
s
1
9
/
1
/
2
0
1
6

    c)   Marring or scratching.

But if loss or damage by the "specified causes of loss" or building glass breakage results, we will pay for that resulting loss or damage.

e.   Explosion of steam boilers, steam pipes, steam engines or steam turbines owned or leased by you, or operated under your control. But if loss or damage by fire or combustion explosion results, we will pay for that resulting loss or damage. We will also pay for loss or damage caused by or resulting from the explosion of gases or fuel within the furnace of any fired vessel or within the flues or passages through which the gases of combustion pass.

f.   Continuous or repeated seepage or leakage of water that occurs over a period of fourteen (14) days or more.

g.   Water, other liquids, powder or molten material that leaks or flows from plumbing, heating, air conditioning or other equipment (except fire protective systems) caused by or resulting from freezing, unless:

   1)   You do your best to maintain heat in the building or structure; or

   2)   You drain the equipment and shut off the supply if the heat is not maintained.

h.   Dishonest or criminal act by you, any of your partners, employees, directors, trustees, authorized representatives or anyone to whom you entrust the property for any purpose:

   1)   Acting alone or in collusion with others; or

   2)   Whether or not occurring during the hours of employment.

This exclusion does not apply to acts of destruction by your employees; but theft by employees is not covered.

i.   Voluntary parting with any property by you or anyone else to whom you have entrusted the property if induced to do so by any fraudulent scheme, trick, device or false pretense.

j.   Rain, snow, ice or sleet to personal property in the open.

k.   Collapse, except as provided below in the Additional Coverage for Collapse. But if loss or damage by a Covered Cause of Loss results at the described premises, we will pay for that resulting loss or damage.

l.   Release, discharge or dispersal of "pollutants" unless the release, discharge or dispersal is itself caused by any of the "specified causes of loss." But if loss or damage by the "specified causes of loss" results, we will pay for the resulting damage caused by the "specified cause of loss."

3.   We will not pay for loss or damage caused by or resulting from any of the following. But if loss or damage by a Covered Cause of Loss results, we will pay for that resulting loss or damage.

   a.   Weather conditions. But this exclusion only applies if weather conditions contribute in any way with a cause or event excluded in paragraph 1. above to produce the loss or damage.

   b.   Acts or decisions, including the failure to act or decide, of any person, group, organization or governmental body.

   c.   Faulty, inadequate or defective:

      1)   Planning, zoning, development, surveying, siting;

      2)   Design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction;

      3)   Materials used in repair, construction, renovation or remodeling; or

Copyright, ISO Commercial Risk Services, Inc.

CP 1030(Ed.07/88)
LX1022

A
I
G

O
L
0
0
3
:
S
e
s
s

1

9
/
1
/
2
0
1
6

4)   Maintenance;

of part or all of any property on or off the described premises.

4.   Special Exclusions

The following provisions apply only to the specified Coverage Forms.

a.   Business Income (And Extra Expense) Coverage Form, Business Income (Without Extra Expense) Coverage Form, or Extra Expense Coverage Form

We will not pay for:

1)   Any loss caused by or resulting from:

a)   Damage or destruction of "finished stock"; or

b)   The time required to reproduce "finished stock."

This exclusion does not apply to Extra Expense.

2)   Any loss caused by or resulting from direct physical loss or damage to radio or television antennas, including their lead-in wiring, masts or towers.

3)   Any increase of loss caused by or resulting from:

a)   Delay in rebuilding, repairing or replacing the property or resuming "operations," due to interference at the location of the rebuilding, repair or replacement by strikers or other persons; or

b)   Suspension, lapse or cancellation of any license, lease or contract. But if the suspension, lapse or cancellation is directly caused by the suspension of "operations," we will cover such loss that affects your Business Income during the "period of restoration."

4)   Any Extra Expense caused by or resulting from suspension, lapse or cancellation of any license, lease or contract beyond the "period of restoration."

5)   Any other consequential loss.

b.   Leasehold Interest Coverage Form

1)   Paragraph B.1.a. Ordinance or Law, does not apply to insurance under this Coverage Form.

2)   We will not pay for any loss caused by:

a)   Your cancelling the lease;

b)   The suspension, lapse or cancellation of any license; or

c)   Any other consequential loss.

c.   Legal Liability Coverage Form

1)   The following Exclusions do not apply to insurance under this Coverage Form:

a)   Paragraph B.1.a., Ordinance or Law;

b)   Paragraph B.1.c., Governmental Action;

c)   Paragraph B.1.d., Nuclear Hazard;

d)   Paragraph B.1.e., Power Failure; and

e)   Paragraph B.1.f., War and Military Action.

2)   Contractual Liability

Copyright, ISO Commercial Risk Services, Inc.

CP 1030(Ed.07/88)
LX1022

We will not defend any claim or "suit," or pay damages that you are legally liable to pay, solely by reason of your assumption of liability in a contract or agreement.

3) **Nuclear Hazard**

We will not defend any claim or "suit," or pay any damages, loss, expense or obligation, resulting from nuclear reaction or radiation, or radioactive contamination, however caused.

## C.  LIMITATIONS

1. We will not pay for loss of or damage to:

    a. Steam boilers, steam pipes, steam engines or steam turbines caused by or resulting from any condition or event inside such equipment. But we will pay for loss of or damage to such equipment caused by or resulting from an explosion of gases or fuel within the furnace of any fired vessel or within the flues or passages through which the gases of combustion pass.

    b. Hot water boilers or other water heating equipment caused by or resulting from any condition or event inside such boilers or equipment, other than an explosion.

    c. The interior of any building or structure caused by or resulting from rain, snow, sleet, ice, sand or dust, whether driven by wind or not, unless:

        1) The building or structure first sustains damage by a Covered Cause of Loss to its roof or walls through which the rain, snow, sleet, ice, sand or dust enters; or

        2) The loss or damage is caused by or results from thawing of snow, sleet or ice on the building or structure.

    d. Building materials and supplies not attached as part of the building or structure, unless held for sale by you, caused by or resulting from theft, except as provided in C.5.a. below.

    e. Property that is missing, but there is no physical evidence to show what happened to it, such as shortage disclosed on taking inventory.

    f. Gutters and downspouts caused by or resulting from weight of snow, ice or sleet.

    g. Property that has been transferred to a person or to a place outside the described premises on the basis of unauthorized instructions.

2. We will not pay more for loss of or damage to glass that is part of a building or structure than one hundred (100) dollars for each plate, pane, multiple plate insulating unit, radiant or solar heating panel, jalousie, louver or shutter. We will not pay more than five hundred (500) dollars for all loss of or damage to building glass that occurs at any one time.

   This Limitation does not apply to loss or damage by the "specified causes of loss," except vandalism.

3. We will not pay for loss of or damage to the following types of property unless caused by the "specified causes of loss" or building glass breakage:

    a. Valuable papers and records, such as books of account, manuscripts, abstracts, drawings, card index systems, film, tape, disc, drum, cell or other data processing, recording or storage media, and other records.

    b. Animals, and then only if they are killed or their destruction is made necessary.

    c. Fragile articles such as glassware, statuary, marbles, chinaware and porcelains, if broken. This restriction does not apply to:

        1) Glass that is part of a building or structure;

        2) Containers of property held for sale; or

Copyright, ISO Commercial Risk Services, Inc.

3) *Photographic or scientific instrument lenses.*

d.  Builder's machinery, tools, and equipment you own or that are entrusted to you, while away from the premises described in the Declarations, except as provided in paragraph C.5.b. below.

4.  For loss or damage by theft, the following types of property are covered only up to the limits shown:

a.  Two thousand five hundred (2,500) dollars for furs, fur garments and garments trimmed with fur.

b.  Two thousand five hundred (2,500) dollars for jewelry, watches, watch movements, jewels, pearls, precious and semi-precious stones, bullion, gold, silver, platinum and other precious alloys or metals. This limit does not apply to jewelry and watches worth one hundred (100) dollars or less per item.

c.  Two thousand five hundred (2,500) dollars for patterns, dies, molds and forms.

d.  Two hundred fifty (250) dollars for stamps, tickets and letters of credit.

5.  Builders' Risk Coverage Form Limitations

The following provisions apply only to the Builders' Risk Coverage Form.

a.  Limitation 1.d. is replaced by the following:

d.  Building materials and supplies not attached as part of the building or structure caused by or resulting from theft.

b.  Limitation 3.d. is replaced by the following:

d.  Builders' machinery, tools and equipment you own or that are entrusted to you.

## D.  ADDITIONAL COVERAGE - COLLAPSE

We will pay for loss or damage caused by or resulting from risks of direct physical loss involving collapse of a building or any part of a building caused only by one or more of the following:

1.  The "specified causes of loss" or breakage of building glass, all only as insured against in this Coverage Part;

2.  Hidden decay;

3.  Hidden insect or vermin damage;

4.  Weight of people or personal property;

5.  Weight of rain that collects on a roof;

6.  Use of defective material or methods in construction, remodeling or renovation if the collapse occurs during the course of the construction, remodeling or renovation.

We will not pay for loss or damage to the following types of property, if otherwise covered in this Coverage Part, under items 2., 3., 4., 5. and 6. unless the loss or damage is a direct result of the collapse of a building:

outdoor radio or television antennas, including their lead-in wiring, masts or towers; awnings, gutters and downspouts; yard fixtures; outdoor swimming pools; fences; piers, wharves and docks; beach or diving platforms or appurtenances; retaining walls, walks, roadways and other paved surfaces.

Collapse does not include settling, cracking, shrinkage, bulging or expansion.

This Additional Coverage will not increase the Limits of Insurance provided in this Coverage Part.

## E.  ADDITIONAL COVERAGE EXTENSIONS

1.  Property in Transit.  This Extension applies only to your personal property to which this form applies.

6 of 7

A
I
G

O
L
0
0
3
:
S
e
s
s

1

9
/
1
/
2
0
1
6

a.  You may extend the insurance provided by this Coverage Part to apply to your personal property (other than property in the care, custody, or control of your salespersons) in transit more than one hundred (100) feet from the described premises. Property must be in or on a motor vehicle you own, lease or operate while between points in the coverage territory.

b.  Loss or damage must be caused by or result from one of the following causes of loss:

    1)  Fire, lightning, explosion, windstorm or hail, riot or civil commotion, or vandalism.

    2)  Vehicle collision, upset or overturn. Collision means accidental contact of your vehicle with another vehicle or object. It does not mean your vehicle's contact with the road bed.

    3)  Theft of an entire bale, case or package by forced entry into a securely locked body or compartment of the vehicle. There must be visible marks of the forced entry.

c.  The most we will pay for loss or damage under this Extension is one thousand (1,000) dollars.

    This Coverage Extension is additional insurance. The Additional Condition, Coinsurance, does not apply to this Extension.

2.  Water Damage, Other Liquids, Powder or Molten Material Damage. If loss or damage caused by or resulting from covered water or other liquid, powder or molten material damage loss occurs, we will also pay the cost to tear out and replace any part of the building or structure to repair damage to the system or appliance from which the water or other substance escapes.

    We will not pay the cost to repair any defect that caused the loss or damage; but we will pay the cost to repair or replace damaged parts of fire extinguishing equipment if the damage:

    a.  Results in discharge of any substance from an automatic fire protection system; or

    b.  Is directly caused by freezing.

F.  DEFINITIONS

"Specified Causes of Loss" means the following: Fire; lightning; explosion; windstorm or hail; smoke; aircraft or vehicles; riot or civil commotion; vandalism; leakage from fire extinguishing equipment; sinkhole collapse; volcanic action; falling objects; weight of snow, ice or sleet; water damage.

1.  Sinkhole collapse means the sudden sinking or collapse of land into underground empty spaces created by the action of water on limestone or dolomite. This cause of loss does not include:

    a.  The cost of filling sinkholes; or

    b.  Sinking or collapse of land into man-made underground cavities.

2.  Falling objects does not include loss or damage to:

    a.  Personal property in the open; or

    b.  The interior of a building or structure, or property inside a building or structure, unless the roof or an outside wall of the building or structure is first damaged by a falling object.

3.  Water damage means accidental discharge or leakage of water or stream as the direct result of the breaking or cracking of any part of a system or appliance containing water or steam.

Copyright, ISO Commercial Risk Services, Inc.

CP 1030 (Ed.07/88)
LX1022

A
I
G

O
L
0
0
3
:
S
e
s
s

1
9
/
1
/
2
0
1
6

## ENDORSEMENT

This endorsement, effective 12:01 AM 05/01/2014

Forms a part of policy no.:  019946713

Issued to: COASTAL TRANSPORT CO, INC.

By: LEXINGTON INSURANCE COMPANY

### ECONOMIC SANCTIONS ENDORSEMENT

The Insurer shall not be deemed to provide cover and the Insurer shall not be liable to pay any claim or provide any benefit hereunder to the extent that the provision of such cover, payment of such claim or provision of such benefit would expose the Insurer, its parent company or its ultimate controlling entity to any sanction, prohibition or restriction under United Nations resolutions or the trade or economic sanctions, laws or regulations of the European Union or the United States of America.


All other terms and conditions of the policy remain the same.

*Erik P. Mill*
_____

**Authorized Representative**

PR4225 (07/13)              ©2013 American International Group, Inc.
All Right Reserved.              Page 1 of 1

A
I
G

O
L
O
O
3
:
S
e
s
s

1
9
/
1
/
2
0
1
6

### ENDORSEMENT #001

This endorsement, effective 12:01 AM 05/01/2014

Forms a part of policy no:  019946713

Insured to:  COASTAL TRANSPORT, INC

By:  LEXINGTON INSURANCE COMPANY

In consideration of the premium charged, it is understood and agreed that the following additional terms and conditions are hereby made a part of this policy:

This policy is extended to cover Accounts Receivable subject to the following sublimits:

| | |
|---|---|
| **$3,000,000 Per Occurrence** | As respects the location situated 1603-1603A Ackerman, San Antonio, TX; |
| **$1,000,000 Per Occurrence** | As respects the location situated at 1214 S. 51st Avenue, Phoenix, AZ |

Accounts receivable is defined as follows:

**ACCOUNTS RECEIVABLE:**  This Policy covers any shortage in the collection of Accounts Receivable directly resulting from direct physical loss or damage insured by this Policy to Accounts Receivable Records.

The Company shall be liable for:

1.      Any collection expenses over and above the normal collection costs.

2.      Interest charges on any loan to offset impaired collections pending repayment of such sums that cannot be collected.

3.      Other reasonable and necessary expenses incurred by the insured to recreate Accounts Receivable Records.

Unearned interest and service charges on deferred payment accounts and normal credit losses on bad debts shall be deducted in determining the recovery hereunder.

All amounts recovered by the insured on Accounts Receivable outstanding at the time of such loss or damage shall belong and be paid to the Company by the insured up to a total not exceeding the amount of loss paid hereunder, but all recoveries exceeding that amount shall be for and belong to the insured.

In the event it is possible to reconstruct the insured's Accounts Receivable Records after they have been physically lost or damaged, so that no shortage in collection of Accounts Receivable is sustained, the Company shall be liable only for the cost of blank Accounts Receivable Records and the time required, with the exercise of due diligence and dispatch, to reestablish and/or reconstruct such Accounts Receivable Records, but only so far as not covered by any other insurance.

Authorized Representative OR
Countersignature (in states where applicable)

LEXDOC021
LX0404

A
I
G

O
L
O
O
3
:
S
e
s
s

1
9
/
1
/
2
0
1
6

This extension of coverage does not apply to loss due to:

1.     Bookkeeping, accounting or billing errors and omissions; and

2.     Alteration, falsification, manipulation, concealment, destruction, or disposal of Accounts Receivable Records committed to conceal the wrong giving, taking, obtaining or withholding of money, securities or other property, but only to the extent of such wrongful giving, taking, obtaining or withholding.

Accounts Receivable will be valued at the amount owed the Insured which the Insured is unable to collect from customers, and shall include:

1.     Any collection expenses over and above the normal collection costs;

2.     Interest charges on any loan to offset impaired collections pending repayment of such sums that cannot be collected; and

3.     Other reasonable and necessary expenses incurred by the Insured to recreate Accounts Receivable Records.

Unearned interest and service charges on deferred payment accounts and normal credit losses on bad debts shall be deducted in determining the recovery hereunder.

After payment of loss by the Company, all amounts recovered by the Insured on Accounts Receivable for which the Insured has been paid will belong to and will be paid to the Company by the Insured up to the total amount of loss paid by this Company. All recoveries in excess of such amounts will belong to the Insured.

In the event it is possible to reconstruct the Insured's Accounts Receivable Records after they have been physically lost or damaged, so that no shortage in collection of Accounts Receivable is sustained, the Company shall only be liable for the costs of the material and the time required to reconstruct such records, with the exercise of due diligence and dispatch, but only to the extent that such amounts are not covered by any other insurance.

This policy is extended to cover Valuable Papers and Records subject to the following sublimits:

$300,000 Per Occurrence     As respects the location situated 1603-1603A Ackerman, San
Antonio, TX;
$100,000 Per Occurrence     As respects the location situated at 1214 S. 51st Avenue, Phoenix,
AZ

Valuable Papers and Records is defined as follows:

Valuable Papers and Records means documents that are written, printed, or otherwise inscribed. These include:

1.     Books, manuscripts, abstracts, maps and drawings; film and other photographically produced records, such as slides and microfilm;

2.     Legal and financial agreements such as deeds and mortgages;

3.     Addressograph plates; and

Authorized Representative OR

Countersignature (in states where applicable)

A
I
G

O
L
O
O
3
:
S
e
s
s

1
9
/
1
/
2
0
1
6

4.    Any electrically produced data such as printouts, punched cards, tapes or discs.

Valuable Papers and Records does not mean money and securities and converted data, programs or instructions used in data processing operations, including the materials on which the data is stored.

Valuable Papers and Records does not mean and does not include any item which would qualify as Fine Arts.

Valuable Papers and Records will be valued at the cost to replace or restore the property with like kind and quality including the cost to research, gather and assemble information. If not replaced, the Company will only pay the blank value of the papers or records.

The deductibles that apply to this policy are understood to read as follows:

$5,000 per occurrence except as follows:

<u>With respect to Flood:</u>
With respect to any flood loss, the deductible shall be $50,000.

<u>With respect to Earthquake:</u>
The sum of $ 50,000 shall be deducted from any adjusted loss due to Earthquake.

<u>With respect to Wind:</u>
The deductible shall be 5% of the total values at the time of loss at each location involved in the loss, subject to a minimum of $25,000 for any one occurrence as respects Wind/Hail/Hurricane for locations in the Entire States of Florida and Hawaii and 1" tier counties in the following states, Al, GA, LA, MS, NC, SC, TX and VA

Tier 1 High Hazard Wind Zones (Texas to North Carolina, Hawaii, Puerto Rico and U.S. Virgin Islands) means the following wind zones:

| TIER 1 HIGH HAZARD WIND ZONES (TEXAS TO NORTH CAROLINA, HAWAII, PUERTO RICO AND U.S. VIRGIN ISLANDS) | |
|---|---|
| **State** | **Geographic Areas** |
| Alabama | Counties: Baldwin, Mobile |
| Georgia | Counties: Bryan, Camden, Chatham, Glynn, Liberty, McIntosh |
| Hawaii | Entire State |
| Louisiana | Parishes: Assumption, Calcasieu, Cameron, Iberia, Jefferson, Lafourche, Livingston, Orleans, Plaquemines, St. Bernard, St. Charles, St. James, St. John the Baptist, St. Mary, St. Tammany, Tangipahoa, Terrebonne, Vermilion |
| Mississippi | Counties: Hancock, Harrison, Jackson |
| North Carolina | Counties: Beaufort, Bertie, Brunswick, Camden, Carteret, Chowan, Columbus, Craven, Currituck, Dare, Hyde, Jones, New Hanover, Onslow, Pamlico, Pasquotank, Pender, Perquimans, Tyrell, Washington |
| Puerto Rico | Entire Territory |

Authorized Representative OR
Countersignature (in states where applicable)

A
I
G

O
L
0
0
3
:
S
e
s
s

1
9
/
1
/
2
0
1
6

| South Carolina | Counties: Beaufort, Berkley, Charleston, Colleton, Dorchester, Georgetown, Hampton, Horry, Jasper |
|---|---|
| Texas | Counties: Aransas, Brazoria, Calhoun, Cameron, Chambers, Galveston, Harris, Jackson, Jefferson, Kenedy, Kleberg, Liberty, Matagorda, Newton, Nueces, Orange, Refugio, San Patricio, Victoria, Willacy |
| U.S. Virgin Islands | Entire Territory |

Tier 1 High Hazard Wind Zones (Virginia to Maine) means the following wind zones:

| TIER 1 HIGH HAZARD WIND ZONES (VIRGINIA TO MAINE) | |
|---|---|
| State | Geographic Areas |
| Connecticut | Counties: Fairfield, Middlesex, New Haven, New London |
| Delaware | Counties: Sussex |
| Maine | Counties: Androscoggin, Cumberland, Hancock, Knox, Lincoln, Sagadahoc, Waldo, Washington, York |
| Maryland | Counties: Calvert, Charles, Dorchester, St. Mary's, Somerset, Wicomico, Worcester |
| Massachusetts | Counties: Barnstable, Bristol, Dukes, Essex, Nantucket, Norfolk, Plymouth, Suffolk |
| New Hampshire | Counties: Rockingham, Strafford |
| New Jersey | Counties: Atlantic, Bergen, Cape May, Cumberland, Essex, Hudson, Middlesex, Monmouth, Ocean, Union |
| New York | Counties: Bronx, Kings, Nassau, New York, Queens, Richmond, Suffolk, Westchester |
| Rhode Island | Counties: Bristol, Kent, Newport, Providence, Washington |
| Virginia | Counties: Accomack, Charles City, Gloucester, Isle of Wight, James City, Lancaster, Mathews, Middlesex, New Kent, Northampton, Northumberland, Surry, York, Westmoreland<br><br>Independent Cities: Chesapeake, Hampton, Newport News, Norfolk, Poquoson, Portsmouth, Prince George, Suffolk, Sussex, Virginia Beach, Williamsburg |

Tier 1 High Hazard Wind Zones (Florida) means the following wind zones:

| TIER 1 HIGH HAZARD WIND ZONES (FLORIDA) | |
|---|---|
| State | Geographic Areas |
| Florida | Entire State |

All other terms and conditions of the policy remain unchanged.

Authorized Representative OR
Countersignature (in states where applicable)

LEXDOC021
LX0404

ENDORSEMENT # 002

This endorsement, effective 12:01 AM 05/01/2014

Forms a part of policy no.:  019946713

Issued to: COASTAL TRANSPORT CO, INC.

By: LEXINGTON INSURANCE COMPANY

---

In consideration of the premium at which this policy is written, it is understood and agreed that the following is added as a Named Insured:

Blake Atwell 1986 Irrevocable Trust
Richard A. Atwell
Atwell Classic Cars, Ltd.
Atwell Family Investment, Ltd.
Richard B. Atwell Investment Trust

ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.

**Authorized Representative OR**
**Countersignature (in states where applicable)**

LEXDOC021
LX0404

A
I
G

O
L
O
O
3
:
S
e
s
s

1
9
/
1
/
2
0
1
6

## ENDORSEMENT # 003

**This endorsement, effective 12:01 AM 05/01/2014**

**Forms a part of policy no.: 019946713**

**Issued to: COASTAL TRANSPORT CO, INC.**

**By: LEXINGTON INSURANCE COMPANY**

In consideration of the premium charged, it is understood and agreed that Accounts Receivable coverage is hereby extended to the following locations:

Brookfield Data Center
800 Oliver Ave
Suite 3
Indianapolis, IN 46225

Backup
12400 N Meridian
Suite 180
Carmel, IN 46032

All other terms and conditions remain unchanged.

_Erik P. Will_

**Authorized Representative OR
Countersignature (in states where applicable)**

LEXDOC021
LX0404

**ENDORSEMENT**

This endorsement, effective 12:01 AM 05/01/2014

Forms a part of policy no.:  019946713

Issued to: COASTAL TRANSPORT CO, INC.

By: LEXINGTON INSURANCE COMPANY

## TERRORISM PREMIUM CHARGE ENDORSEMENT WITH EXCLUSION FOR BIOLOGICAL AND/OR CHEMICAL TERRORISM

This endorsement modifies insurance provided by the policy:

The Terrorism charge is $2,508 and is included in the Policy Premium shown on the Declarations Page of this policy. Since not otherwise excluded, Terrorism which causes direct physical loss or damage to property is covered.

However, the Company does not insure for loss or damage caused directly or indirectly by Biological and/or Chemical Terrorism whether controlled or uncontrolled, proximate or remote, sudden or over any length of time, or which is contributed to or aggravated by any other event, cause, or peril. Such loss or damage is excluded regardless of any other event, cause, or peril contributing concurrently or in any sequence to the loss or damage. This exclusion applies whether or not the loss event results in widespread damage or affects a substantial area.

The following definitions apply to this policy:

1. **Company** means the insurer as shown in the attachment clause of this endorsement.

2. **Biological and/or Chemical Terrorism** means the dispersal, discharge, or release of pathogenic, toxic, poisonous, or damaging biological or chemical agents or substances in an act(s) of Terrorism.

3. **Terrorism** means the use or threatened use of force or violence against a person or property, or commission of an act dangerous to human life or property, or commission of an act that interferes with or disrupts an electronic or communication system, undertaken by any person or group, whether or not acting on behalf of or in any connection with any organization, government, power, authority or military force, when the effect is to intimidate, coerce or harm:

    a. A government;

    b. The civilian population of a country, state or community; or

    c. Disrupt the economy of a country, state or community.

    So long as the Terrorism Risk Insurance Act of 2002, and any revisions or amendments thereto is in effect (the "Act"), Terrorism includes a certified act of terrorism defined by Section 102.  Definitions of the Act.

All other terms and conditions of the policy remain the same.

Erik P. Mill

**Authorized Representative OR
Countersignature (in states where applicable)**

PR8543 (11/09)

A
I
G

O
L
0
0
3
:
S
e
s
s

1
9
/
1
/
2
0
1
6

ENDORSEMENT


This endorsement, effective 12:01 AM 05/01/2014

Forms a part of policy no.:  019946713

Issued to: COASTAL TRANSPORT CO, INC.

By: LEXINGTON INSURANCE COMPANY


REPLACEMENT COST COVERAGE ENDORSEMENT


This endorsement applies only with respect to the premises described in the following Schedule and affords insurance on a replacement cost basis only on the property described below.

SCHEDULE

| Location of Premises | Property Covered on a Replacement Cost Basis |
|---|---|

SEE SCHEDULE ATTACHED


1.   Replacement Cost Clause: The provisions of Valuation Clause(s) 1.A, B, E and G of this policy applicable to the property described as covered on a replacement cost basis are amended to substitute the term "replacement cost (without deduction for depreciation)" for the term "actual cash value" wherever it appears in this policy, and the Coinsurance Clause of this endorsement (if applicable) supersedes and replaces all other Co-insurance Clauses otherwise applicable. Subject in all other respects to the provisions of this endorsement and of Valuation Clause of this policy.

2.   This policy does not cover the following property on a replacement cost basis:

   a.   Precious metals, jewelry, precious stones, furs or fur trimmed garments.

   b.   Property of others

   c.   Cost of reproducing information for books of account, abstracts, manuscripts, drawings, card index systems and other records (including film, tape, disc, drum, cell and other magnetic recording or storage media).

   d.   Paintings, etchings, pictures, tapestries, statuary, marbles, bronzes, antique furniture, rare books, antique silver, porcelains, rare glassware and bric-a-brac, or other articles of art, rarity or antiquity.

   e.   Carpeting, domestic appliances  or household furniture and outdoor equipment, all whether permanently attached to the building structure or not.

3.   The Company shall not be liable under this endorsement for any loss unless and until the damaged or destroyed property is actually repaired or replaced by the insured with due diligence and dispatch.

PR9017(Ed.01/91)                                        Page 1  of 3
LX1137

A
I
G

O
L
0
0
3
:
S
e
s
s

1

9
/
1
/
2
0
1
6

4.   Coinsurance Clause (if shown in policy declarations). This Company shall not be liable for a greater proportion of any loss or damage to the property covered under this policy than the limit of liability under this policy for such property bears to the amount produced by multiplying the coinsurance percentage applicable (specified in this policy) by the total of (a) the replacement cost (without deduction for depreciation) of that part of said property which is specifically described as covered on a replacement cost basis and (b) the actual cash value of that part of said property which is covered on an actual cash value basis at time of loss.

In the event that the aggregate claim for any loss is both less than $10,000 and less than 5% of the limit of liability for all contributing insurance applicable to the property involved at the time such loss occurs, no special inventory or appraisement of the undamaged property shall be required, provided that nothing herein shall be construed to waive application of the first paragraph of this clause.

If insurance under this policy is divided into separate limits of liability, the foregoing shall apply separately to the property covered under each such limit of liability.

The cost of the removal of debris, shall not be considered in the determination of actual cash value or replacement cost when applying the Coinsurance Clause.

5.   This Company's liability for loss on a replacement cost basis, shall not exceed the smallest of the following amounts:

a.   the amount of this policy applicable to the damaged or destroyed property.

b.   the replacement cost of identical property or any part thereof intended for the same occupancy and use; or

c.   the amount actually and necessarily expended in repairing or replacing said property or any part thereof.

6.   The Insured may elect to make claim under this policy in accordance with its provisions, disregarding this endorsement, except that the foregoing Coinsurance Clause shall apply, if applicable, and the Insured may make further claim for any additional liability brought about by this endorsement in accordance with its provisions, provided the Company is notified in writing within 180 days after loss of the Insured's intent to make such further claim.

_Erik P. Mill_

Authorized Representative OR
Countersignature (in states where applicable)

Policy no.: 019946713                    **SCHEDULE**

**Location of Premises**

AS PER SCHEDULE ON FILE WITH
THIS COMPANY.

**Property Covered on a
Replacement Cost Basis**

ALL REAL AND PERSONAL PROPERTY.

PR9017(Ed.01/91)
LX1137

                         Page  3  of 3

A
I
G

O
L
O
O
3
:
S
e
s
s

1
9
/
1
/
2
0
1
6

### ENDORSEMENT

This endorsement, effective 12:01 AM 05/01/2014

Forms a part of policy no.: 019946713

Issued to: COASTAL TRANSPORT CO, INC.

By: LEXINGTON INSURANCE COMPANY

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

### BUSINESS INCOME (AND EXTRA EXPENSE) ENDORSEMENT

In consideration of the premium paid and subject to all of the terms, conditions, definitions, exclusions, limitations and provisions of the Policy to which this endorsement is attached (the "Policy"), coverage is provided for loss of "Business Income" (and "Extra Expense") as defined herein.

#### A. COVERAGE

Coverage is provided as described below for one or more of the following options for which a Limit of Insurance is shown in the Declarations:

(1) "Business Income" including "Rental Value".

(2) "Business Income" other than "Rental Value".

(3) "Rental Value".

"Business Income" means the: a. Net Income (Net Profit or Loss before income taxes) that would have been earned or incurred during the "Period of Restoration"; and b. Continuing normal operating expenses, including payroll, incurred during such period.

For manufacturing risks, Net Income includes the net sales value of production.

If option (1) above is selected, the term "Business Income" will include "Rental Value". If option (3) above is selected, the term "Business Income" will mean "Rental Value" only.

The Company providing this insurance (hereinafter "Company") will pay for the actual loss of "Business Income" sustained by the Insured due to the necessary "suspension" of the Insured's "operations" during the "period of restoration". The "suspension" must be caused by direct physical loss of or damage to Covered Property at premises which are described in the Declarations and for which a "Business Income" Limit of Insurance is shown in the Declarations. The loss or damage must be directly caused by a peril insured against by the Policy.

Loss of "Business Income" shall not apply to "suspension" of the Insured's operations caused by loss or damage to "finished goods" sold but not delivered.

If the Insured occupies only part of the site at which the described premises are located, insured premises means:

(1) the portion of the building rented, leased or occupied by the Insured; and

(2) any area within the building or on the site at which the described premises are located, if that area services, or is used to gain access to, the described premises.

#### B. ADDITIONAL COVERAGE - EXTRA EXPENSE

The Company will pay "Extra Expense" as defined below, but only to the extent such "Extra Expense" reduces the amount of a covered loss that otherwise would have been payable under this Endorsement, unless otherwise provided by endorsement hereto.

A
I
G

O
L
O
O
3
:
S
e
s
s

1
9
/
1
/
2
0
1
6

"Extra Expense" means necessary expenses incurred by the Insured during the "period of restoration" that would not have been incurred if there had been no direct physical loss or damage to property caused by or resulting from a peril insured against by the Policy.

　　(1) The Company will pay "Extra Expense" incurred to avoid or reduce the "suspension" of business and to continue "operations":

　　　　(a) at the described premises; or

　　　　(b) at replacement premises or at temporary locations, including:

　　　　　　(i) relocation expenses; and

　　　　　　(ii) costs to equip and operate the replacement or temporary locations.

　　(2) The Company will pay "Extra Expense" incurred to reduce the "suspension" of business if the Insured cannot continue "operations".

　　(3) The Company will pay "Extra Expense" incurred to:

　　　　(a) repair or replace any property; or

　　　　(b) research, replace or restore the lost information on damaged valuable papers and records;

## C. LIMITS OF INSURANCE

The Insurance provided by this Endorsement is within, and not in addition to, the Limits of Insurance stated in Item 3. of the Declarations.

Further, the most the Company will pay for any one loss and all losses under this Endorsement is the amount stated, if any, in Item 3. D. of the Declarations.

## D. ADDITIONAL LOSS CONDITIONS

Loss Determination

　　(1) The amount of a "Business Income" loss will be determined based on:

　　　　(a) the Net Income of the business before the direct physical loss or damage occurred;

　　　　(b) the likely Net Income of the business if no physical loss or damage had occurred, but not including any Net Income that would likely have been earned as a result of an increase in the volume of business due to favorable business conditions caused by the impact of the Perils Insured Against on customers or on other businesses;

　　　　(c) the operating expenses, including payroll expenses, necessary to resume "operations" with the same quality of service that existed just before the direct physical loss or damage; and

　　　　(d) other relevant sources of information, including:

　　　　　　(i) the Insured's financial records and accounting procedures;

　　　　　　(ii) bills, invoices and other vouchers; and

　　　　　　(iii) deeds, liens or contracts.

　　(2) The amount of "Extra Expense" will be determined based on:

　　　　(a) all expenses that exceed the normal operating expenses that would have been incurred by "operations" during the "period of restoration" if no direct physical loss or damage had occurred. The Company will deduct from the total of such expenses:

A
I
G

O
L
0
0
3
:
S
e
s
s

1

9
/
1
/
2
0
1
6

(i) the salvage value that remains of any property bought for temporary use during the "period of restoration", once "operations" are resumed; and

(ii) any "Extra Expense" that is paid for by other insurance, except for insurance that is written subject to the same plan, terms, conditions and provisions as this insurance; and

(b) all necessary expenses that reduce the "Business Income" loss that otherwise would have been incurred.

(3) Resumption Of Operations

The Company will reduce the amount of:

(a) "Business Income" loss, other than "Extra Expense", to the extent the Insured can resume "operations", in whole or in part, by using damaged or undamaged property (including merchandise or stock) at the described premises or elsewhere;

(b) "Extra Expense" loss to the extent the Insured can return "operations" to normal and discontinue such "Extra Expense".

(4) If the Insured does not resume "operations", or does not resume "operations" as quickly as possible, the Company will pay based on the length of time it would have taken to resume "operations" as quickly as possible.

E. ADDITIONAL DEFINITIONS

(1) "Finished goods" means those goods on which the Insured and/or others for the account of the Insured, shall have completed work to the extent that such goods are in a state ready for sale, normal to the business of the Insured.

(2) "Operations" means:

(a) the Insured's business activities occurring at the described premises; and

(b) the tenantability of the described premises, if coverage for "Business Income" including "Rental Value" or "Rental Value" applies.

(3) "Period of Restoration" means the period of time that:

(a) Begins:

thirty (30) days after the direct physical loss or damage caused by or resulting from any Peril Insured Against at the described premises occurs for "Business Income" coverage and "Extra Expense" coverage; and

(b) Ends on the earlier of:

(i) the date when the property at the described premises should be repaired, rebuilt or replaced with reasonable speed and similar quality; or

(ii) the date when business is resumed at a new permanent location.

(iii) twelve (12) calendar months.

"Period of restoration" does not include any increased period required due to the enforcement of any ordinance or law that:

(i) regulates the construction, use or repair, or requires the tearing down of any property; or

(ii) requires any insured or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants".

The expiration date of this policy will not cut short the "period of restoration".

(4) "Rental Value" means:

  (a) the total anticipated rental income from tenant occupancy of the premises described in the Declarations as furnished and equipped by the Insured, and

  (b) the amount of all charges which are the legal obligation of the tenant(s) and which would otherwise be the Insured's obligations, and

  (c) the fair rental value of any portion of the described premises which is occupied by the Insured.

(5) "Suspension" means:

  (a) the slowdown or cessation of the Insured's business activities; or

  (b) that a part or all of the described premises is rendered untenantable, if coverage for Business Income including "Rental Value" or "Rental Value" applies.


All other terms, conditions, definitions, exclusions, limitations and provisions of the Policy remain the same.

---

**Authorized Representative or
Countersignature (in States Where Applicable)**

A
I
G

O
L
0
0
3
:
S
e
s
s

1
9
/
1
/
2
0
1
6

.                                   **ENDORSEMENT**


This endorsement, effective 12:01 AM 05/01/2014

Forms a part of policy no.:  019946713

Issued to: COASTAL TRANSPORT CO,  INC.

By: LEXINGTON  INSURANCE  COMPANY

### ORDINANCE OR LAW COVERAGE

This endorsement modifies insurance provided under the following:

BUILDING AND PERSONAL PROPERTY COVERAGE FORM

A.  If a Covered Cause of Loss occurs to covered Building property, we will pay:

  1.  For loss or damage caused by enforcement of any ordinance or law that:

      a.  Requires the demolition of parts of the same property not damaged by a Covered Cause of Loss;

      b.  Regulates the construction or repair of buildings, or establishes zoning or land use requirements at the described premises; and

      c.  Is in force at the time of loss.

  2.  The increased cost to repair, rebuild or construct the property caused by enforcement of building, zoning or land use ordinance or law.  If the property is repaired or rebuilt, it must be intended for similar occupancy as the current property, unless otherwise required by zoning or land use ordinance law.

  3.  The cost to demolish and clear the site of undamaged parts of the property caused by enforcement of the building, zoning or land use ordinance or law.

B.  However, we will not pay under this endorsement for the costs associated with the enforcement of any ordinance or law which requires any insured or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants".

C.  We will not pay for increased construction costs under this endorsement:

  1.  Until the property is actually repaired or replaced at the same premises or elsewhere; and

  2.  Unless the repairs or replacement are made as soon as reasonably possible after the loss or damage, not to exceed 2 years.  We may extend this period in writing during the 2 years.

D.  We will not pay more:

  1.  If the property is repaired or replaced on the same premises, than the amount you actually spend to:

      a.  Demolish and clear the site; and

      b.  Repair, rebuild or construct the property but not for more than property of the same height, floor area and style on the same premises.

1 of 2
CPO405(Ed.07/88)               Copyright, ISO Commercial Risk Services, Inc.
LX1086

2. If the property is not repaired or replaced on the same premises, then:

   a. The amount you actually spend to demolish and clear the site of the described premises; and

   b. *The cost to replace, on the same premises, the damaged or destroyed property with other property:*

      1) Of comparable material and quality;

      2) Of the same height, floor area and style; and

      3) Used for the same purposes.

3. For all loss or damage in any occurrence than the Limit of Insurance applicable to the covered Building property.

E. The terms of this endorsement apply separately to each building to which the endorsement applies.

Copyright, ISO Commercial Risk Services, Inc.

CP0405(Ed.07/88)
LX1086

A
I
G

O
L
O
O
3
:
S
e
s
s

1
9
/
1
/
2
0
1
6

## ENDORSEMENT

This endorsement, effective 12:01 AM 05/01/2014

Forms a part of policy no.:  019946713

Issued to: COASTAL TRANSPORT CO, INC.

By: LEXINGTON INSURANCE COMPANY

### PROPERTY MILLENNIUM ENDORSEMENT

It is noted and agreed this policy is hereby amended as follows:

A. The Insurer will not pay for Damage or Consequential Loss directly or indirectly caused by, consisting of, or arising from, the failure of any computer, data processing equipment, media microchip, operating systems, microprocessors (computer chip), integrated circuit or similar device, or any computer software, whether the property of the Insured or not, and whether occurring before, during or after the year 2000 that results from the inability to:

1. correctly recognize any date as its true calendar date;

2. capture, save, or retain, and/or correctly manipulate, interpret or process any data or information or command or instruction as a result of treating any date other than its true calendar date; and/or

3. capture, save, retain or correctly process any data as a result of the operation of any command which has been programmed into any computer software, being a command which causes the loss of data or the inability to capture, save, retain or correctly process such data on or after any date.

B. It is further understood that the Insurer will not pay for the repair or modification of any part of an electronic data processing system or its related equipment, to correct deficiencies or features of logic or operation.

C. It is further understood that the Insurer will not pay for Damage or Consequential Loss arising from the failure, inadequacy, or malfunction of any advice, consultation, design, evaluation, inspection, installation, maintenance, repair or supervision done by the Insured or for the Insured or by or for others to determine, rectify or test, any potential or actual failure, malfunction or inadequacy described in A. above.

Such Damage or Consequential Loss described in A, B, or C above, is excluded regardless of any other cause that contributed concurrently or in any other sequence.

This endorsement shall not exclude subsequent Damage or Consequential Loss, not otherwise excluded, which itself results from a Defined Peril. Defined Peril shall mean fire, lightning, explosion aircraft or vehicle impact, falling objects, windstorm, hail, tornado, hurricane, cyclone, riot, strike, civil commotion, vandalism, malicious mischief, earthquake, volcano, tsunami, freeze or weight of snow.

In consequence of all the foregoing the Annual Premium remains unaltered.

All other terms, conditions and exclusions of this policy remain unchanged.

**AUTHORIZED REPRESENTATIVE**
OR Countersignature (in states where applicable)

69859 (2/98)

A
I
G

O
L
O
O
3
:
S
e
s
s

1
9
/
1
/
2
0
1
6

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

STANDARD FIRE POLICY PROVISIONS

This endorsement modifies insurance provided under the following:

COMMERCIAL PROPERTY COVERAGE PART

The provisions of the Standard Fire Policy are stated below. State law still requires that they be attached to all policies. If any conditions of this form are construed to be more liberal than any other policy conditions relating to the perils of fire, lightning or removal, the conditions of this form will apply.

IN CONSIDERATION OF THE PROVISIONS AND STIPULATIONS HEREIN OR ADDED HERETO, AND OF THE PREMIUM SPECIFIED in the Declarations or in endorsements made a part hereof, this Company, for the term of years specified in the Declarations from inception date shown in the Declarations At Noon (Standard Time) to expiration date shown in the Declarations At Noon (Standard Time) at location of property involved, to an amount not exceeding the limit of liability specified in the Declarations, does insure the Insured named in the Declarations and legal representatives, to the extent of the actual cash value of the property at the time of loss, but not exceeding the amount which it would cost to repair or replace the property with material of like kind and quality within a reasonable time after such loss, without allowance for any increased cost of repair or reconstruction by reason of any ordinance or law regulating construction or repair, and without compensation for loss resulting from interruption of business or manufacture, nor in any event for more than the interest of the Insured, against all DIRECT LOSS BY FIRE, LIGHTNING AND OTHER PERILS INSURED AGAINST IN THIS POLICY INCLUDING REMOVAL FROM PREMISES ENDANGERED BY THE PERILS INSURED AGAINST IN THIS POLICY, EXCEPT AS HEREINAFTER PROVIDED, to the property described in the Declarations while located or contained as described in this policy, or pro rata for five (5) days at each proper place to which any of the property shall necessarily be removed for preservation from the perils insured against in this policy, but not elsewhere.

Assignment of this policy shall not be valid except with the written consent of this Company.

This policy is made and accepted subject to the foregoing provisions and stipulations and those hereinafter stated, which are hereby made a part of this policy, together with such other provisions, stipulations and agreements as may be added hereto, as provided in this policy.

| | | |
|---|---|---|
| 1 | Concealment, | This entire policy shall be void if, whether |
| 2 | fraud. | before or after a loss, the Insured has wil- |
| 3 | | fully concealed or misrepresented any ma- |
| 4 | terial fact or circumstance concerning this insurance or the | |
| 5 | subject thereof, or the interest of the Insured therein, or in case | |
| 6 | of any fraud or false swearing by the Insured relating thereto. | |
| 7 | Uninsurable | This policy shall not cover accounts, bills, |
| 8 | and | currency, deeds, evidences of debt, money or |
| 9 | excepted property. | securities; nor, unless specifically named |
| 10 | | hereon in writing, bullion or manuscripts. |
| 11 | Perils not | This Company shall not be liable for loss by |
| 12 | included. | fire or other perils insured against in this |
| 13 | | policy caused, directly or indirectly, by: (a) |
| 14 | enemy attack by armed forces, including action taken by mili- | |
| 15 | tary, naval or air forces in resisting an actual or an immediately | |
| 16 | impending enemy attack; (b) invasion; (c) insurrection; (d) | |
| 17 | rebellion; (e) revolution; (f) civil war; (g) usurped power; (h) | |
| 18 | order of any civil authority except acts of destruction at the time | |
| 19 | of and for the purpose of preventing the spread of fire, provided | |
| 20 | that such fire did not originate from any of the perils excluded | |
| 21 | by this policy; (i) neglect of the Insured to use all reasonable | |
| 22 | means to save and preserve the property at and after a loss, or | |
| 23 | when the property is endangered by fire in neighboring prem- | |
| 24 | ises; (j) nor shall this Company be liable for loss by theft. | |

1 of 4

A
I
G
O
L
0
0
3
:
S
e
s
s

1

9
/
1
/
2
0
1
6

25  Other Insurance.    Other insurance may be prohibited or the
26                      amount of insurance may be limited by en-
27  dorsement attached hereto.
28  Conditions suspending or restricting insurance.  Unless other-
29  wise provided in writing added hereto this Company shall not
30  be liable for loss occurring
31  (a) while the hazard is increased by any means within the con-
32  trol or knowledge of the insured; or
33  (b) while a described building, whether intended for occupancy
34  by owner or tenant, is vacant or unoccupied beyond a period of
35  sixty (60) consecutive days; or
36  (c) as a result of explosion or riot, unless fire ensue, and in
37  that event for loss by fire only.
38  Other perils      Any other peril to be insured against or sub-
39  or subjects.      ject of insurance to be covered in this policy
40                    shall be by endorsement in writing hereon or
41  added hereto.
42  Added provisions.  The extent of the application of insurance
43                     under this policy and of the contribution to
44  be made by this Company in case of loss, and any other pro-
45  vision or agreement not inconsistent with the provisions of this
46  policy, may be provided for in writing added hereto, but no pro-
47  vision may be waived except such as by the terms of this policy
48  is subject to change.
49  Waiver            No permission affecting this insurance shall
50  provisions.       exist, or waiver of any provision be valid,
51                    unless granted herein or expressed in writing
52  added hereto.  No provision, stipulation or forfeiture shall be
53  held to be waived by any requirement or proceeding on the part
54  of this Company relating to appraisal or to any examination
55  provided for herein.
56  Cancellation      This policy shall be cancelled at any time
57  of policy.        at the request of the Insured, in which case
58                    this Company shall, upon demand and sur-
59  render this policy, refund the excess of paid premium above
60  the customary short rates for the expired time.  This pol-
61  icy may be cancelled at any time by this Company by giving
62  to the Insured a five (5) days' written notice of cancellation with
63  or without tender of the excess of paid premium above the pro
64  rata premium for the expired time, which excess, if not ten-
65  dered, shall be refunded on demand.  Notice of cancellation shall
66  state that excess premium (if not tendered) will be re-
67  funded on demand.
68  Mortgage          If loss hereunder is made payable, in whole
69  interests and     or in part, to a designated mortgagee not
70  obligations.      named herein as the insured, such interest in
71                    this policy may be cancelled by giving to such
72                    mortgagee a ten (10) days' written notice of can-
73  cellation.
74  If the Insured fails to render proof of loss such mortgagee, upon
75  notice, shall render proof of loss in the form herein specified
76  within sixty (60) days thereafter and shall be subject to the pro-
77  visions hereof relating to appraisal and time of payment and of
78  bringing suit.  If this Company shall claim that no liability ex-
79  isted as to the mortgagor or owner, it shall, to the extent of pay-
80  ment of loss to the mortgagee, be subrogated to all the mort-
81  gagee's rights of recovery, but without impairing mortgagee's

2 of 4

AIG OL003:sess 19/1/2016

82  right to sue; or it may pay off the mortgage debt and require
83  an assignment thereof and of the mortgage.  Other provisions
84  relating to the interests and obligations of such mortgagee may
85  be added hereto by agreement in writing.
86  Pro rata liability.          This Company shall not be liable for a greater
87                              proportion of any loss than the amount
88  hereby insured shall bear to the whole insurance covering the
89  property against the peril involved, whether collectible or not.
90  Requirements in          The Insured shall give immediate written
91  case loss occurs.          notice to this Company of any loss, protect
92                              the property from further damage, forthwith
93  separate the damaged and undamaged personal property, put
94  it in the best possible order, furnish a complete inventory of
95  the destroyed, damaged and undamaged property, showing in
96  detail quantities, costs, actual cash value and amount of loss
97  claimed; and within sixty (60) days after the loss, unless such time
98  is extended in writing by this Company, the Insured shall render
99  to this Company a proof of loss, signed and sworn to by the
100  Insured, stating the knowledge and belief of the Insured as to
101  the following:  the time and origin of the loss, the interest of the
102  Insured and of all others in the property, the actual cash value of
103  each item thereof and the amount of loss thereto, all encum-
104  brances thereon, all other contracts of insurance, whether valid
105  or not, covering any of said property, any changes in the title,
106  use, occupation, location, possession or exposures of said prop-
107  erty since the issuing of this policy, by whom and for what
108  purpose any building herein described and the several parts
109  thereof were occupied at the time of loss and whether or not it
110  then stood on leased ground, and shall furnish a copy of all the
111  descriptions and schedules in all policies and, if required, verified
112  plans and specifications of any building, fixture or machinery
113  destroyed or damaged.  The Insured, as often as may be reason-
114  ably required, shall exhibit to any person designated by the
115  Company all that remains of any property herein described, and
116  submit to examinations under oath by any person named by this
117  Company, and subscribe the same; and, as often as may be
118  reasonably required, shall produce for examination all books of
119  accounts, bills, invoices and other vouchers, or certified copies
120  thereof if originals be lost, at such reasonable time and place as
121  may be designated by this Company or its representative, and
122  shall permit extracts and copies thereof to be made.
123  Appraisal.                  In case the Insured and this Company shall
124                              fail to agree as to the actual cash value or
125  the amount of loss, then, on the written demand of either, each
126  shall select a competent and disinterested appraiser and notify
127  the other of the appraiser selected within twenty (20) days of such
128  demand.  The appraisers shall first select a competent and dis-
129  interested umpire; and failing for fifteen (15) days to agree upon
130  such umpire, then, on request of the Insured or this Company,
131  such umpire shall be selected by a judge of a court of record in
132  the state in which the property covered is located.  The ap-
133  praisers shall then appraise the loss, stating separately actual
134  cash value and loss to each item; and, failing to agree, shall
135  submit their differences, only to the umpire.  An award in writ-
136  ing, so itemized, of any two (2) when filed with this Company shall
137  determine the amount of actual cash value and loss.  Each
138  appraiser shall be paid by the party selecting him and the ex-

CP0121(Ed.07/88)
LX1099

A
I
G

O
L
O
O
3
:
S
e
s
s

1

9
/
1
/
2
0
1
6

139   penses of appraisal and umpire shall be paid by the parties
140   equally.
141   **Company's**       It shall be optional with this Company to
142   **options.**        take all, or any part, of the property at the
143                       agreed or appraised value, and also to re-
144   pair, rebuild or replace the property destroyed or damaged with
145   other of like kind and quality within a reasonable time, on giv-
146   ing notice of its intention so to do within thirty days after the
147   receipt of the proof of loss herein required.
148   **Abandonment.**    There can be no abandonment to this Com-
149                       pany of any property.
150   **When loss**       The amount of a loss for which this Company
151   **payable.**        may be liable shall be payable sixty days
152                       after proof of loss, as herein provided, is
153   received by this Company and ascertainment of the loss is made
154   either by agreement between the Insured and this Company ex-
155   pressed in writing or by the filing with this Company of an
156   award as herein provided.
157   **Suit.**           No suit or action on this policy for the recov-
158                       ery of any claim shall be sustainable in any
159   court of law or equity unless all the requirements of this policy
160   shall have been complied with, and unless commenced within
161   twelve (12) months next after inception of the loss.
162   **Subrogation.**    This Company may require from the Insured
163                       an assignment of all right of recovery against
164   any party for loss to the extent that payment therefor is made
165   by this Company.

4 of 4

CP0121(Ed.07/88)
LX1099

## ENDORSEMENT

This endorsement, effective 12:01 AM 05/01/2014

Forms a part of policy no.:  019946713

*Issued to: COASTAL TRANSPORT CO, INC.*

By: LEXINGTON INSURANCE COMPANY

## PROPERTY ENDORSEMENT

*It is noted and agreed that this policy is hereby amended as follows:*

The Insurer will not pay for Damage or Consequential loss directly or indirectly caused by, consisting of, or arising from:

1. Any functioning or malfunctioning of the Internet or similar facility, or of any intranet or private network or similar facility,

2. Any corruption, destruction, distortion, erasure or other loss or damage to data, software, or any kind of programming or instruction set,

3. Loss of use or functionality whether partial or entire of data, coding, program, software, any computer or computer system or other device dependent upon any microchip or embedded logic, and any ensuing liability or failure of the Insured to conduct business.

This Endorsement shall not exclude subsequent damage or Consequential loss, not otherwise excluded, which itself results from a Defined Peril. Defined Peril shall mean: Fire, Lightning, Earthquake, Explosion, Falling Aircraft, Flood, Smoke, Vehicle Impact, Windstorm or Tempest.

Such Damage or Consequential loss described in 1, 2, or 3 above is excluded regardless of any other cause that contributed concurrently or in any other sequence.

All other terms, conditions and exclusions of this policy remain unchanged.

_____
**Authorized Representative OR
Countersignature (in states where applicable)**

PR9514 (09/02)

### ENDORSEMENT

This endorsement, effective 12:01 AM 05/01/2014

*Forms a part of policy no.:  019946713*

Issued to: COASTAL TRANSPORT CO,  INC.

By: LEXINGTON  INSURANCE COMPANY

### THIS ENDORSEMENT CHANGES THE  POLICY. PLEASE READ IT CAREFULLY.

### MOLD / FUNGUS  EXCLUSION

*In consideration of the premium charged, it is hereby understood and agreed that this policy is amended as follows.*

The Company shall not be liable for any loss or damage caused by, arising out of, contributed to, or resulting from fungus, mold(s), mildew or yeast; or any spores or toxins created or produced by or emanating from such fungus, mold(s), mildew or yeast;

   (a) fungus includes, but is not limited to, any of the plants or organisms belonging to the major group fungi, lacking chlorophyll, and including mold(s), rusts, mildews, smuts and mushrooms;

   (b) mold(s) includes, but is not limited to, any superficial growth produced on damp or decaying organic matter or on living organisms, and fungi that produce mold(s);

   (c) spores means any dormant or reproductive body produced by or arising or emanating out of any fungus, mold(s), mildew, plants, organisms or microorganisms,

regardless of any other cause or event that contributes concurrently or in any sequence to such loss.

All other terms, conditions, definitions, exclusions, limitations and provisions of the Policy remain the same.

*Erik P. Uhl*

_____
**Authorized Representative OR
Countersignature (in states where applicable)**

LX9512 (08/02)

A
I
G
O
L
0
0
3
:
s
e
s
s
1
9
/
1
/
2
0
1
6

**ENDORSEMENT**

This endorsement, effective 12:01 AM 05/01/2014

Forms a part of policy no.: 019946713

Issued to: COASTAL TRANSPORT CO, INC.

By: LEXINGTON INSURANCE COMPANY

**FLOOD ENDORSEMENT**

1.   In consideration of an additional premium of INCLUDED     It is understood and agreed that
     Paragraph B. EXCLUSIONS, Item g. Water, of CAUSES OF LOSS - SPECIAL FORM CP 1030 is
     amended as follows.

     g.   Water

          1)   Water that backs up from a sewer or drain; or

          2)   Water under the ground surface pressing on, or flowing or seeping through:

               a)   Foundations, walls, floors or paved surfaces;

               b)   Basements, whether paved or not; or

               c)   Doors, windows or other openings.

               But if loss or damage by fire, explosion or sprinkler leakage results, we will pay for
               that resulting loss or damage.

          and special Limits of Liability and a special deductible are added as follows:

          A.   LIMITS OF LIABILITY: The liability of the Company for loss or damage caused by or
               resulting from flood; meaning rising water, surface water, tidal water or tidal wave,
               rising (including the overflowing or breaking of boundaries) of lakes, ponds,
               reservoirs, rivers, harbors, streams and similar bodies of water whether driven by
               wind or not and spray from any of the foregoing shall not exceed the sum of
               2,210,000     at any one insured location. Notwithstanding the limit of liability
               stated herein, if any, liability shall not exceed the sum of 2,210,000     in any
               single one year period or policy period, whichever is less, commencing
               05/01/2014.

          B.   DEDUCTIBLE: The sum of 50,000        shall be deducted from any adjusted
               claim due to flood as defined herein.

2.   If the coverage of the policy to which this endorsement is attached includes both Property Damage
     and Business Interruption, the foregoing limits shall be the maximum amounts collectible under this
     policy for loss or damage resulting from the perils described in Paragraph A above, regardless of
     whether the loss involves Property Damage alone or both Property Damage and Business Inter-
     ruption.

_____

**Authorized Representative OR**
**Countersignature (in states where applicable)**

PR9026 (09/92)
LX1154

A
I
G

O
L
O
O
3
:
S
e
s
s

1

9
/
1
/
2
0
1
6

## BUILDING AND PERSONAL PROPERTY COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations. The words "we," "us" and "our" refer to the Company providing this insurance.

Other words and phrases that appear in quotation marks have special meaning. Refer to SECTION H - DEFINITIONS.

### A.   COVERAGE

We will pay for direct physical loss of or damage to Covered Property at the premises described in the Declarations caused by or resulting from any Covered Cause of Loss.

1.   Covered Property

Covered Property, as used in this Coverage Part, means the following types of property for which a Limit of Insurance is shown in the Declarations:

a.   Building, meaning the building or structure described in the Declarations, including:

1)   Completed additions;

2)   Permanently installed:

a)   Fixtures;

b)   Machinery; and

c)   Equipment;

3)   Outdoor fixtures;

4)   Personal property owned by you that is used to maintain or service the building or structure or its premises, including:

a)   Fire extinguishing equipment;

b)   Outdoor Furniture;

c)   Floor coverings; and

d)   Appliances used for refrigerating, ventilating, cooking, dishwashing or laundering;

5)   If not covered by other insurance:

a)   Additions under construction, alterations and repairs to the building or structure;

b)   Materials, equipment, supplies and temporary structures, on or within one hundred (100) feet of the described premises, used for making additions, alterations or repairs to the building or structure.

b.   Your Business Personal Property located in or on the building described in the Declarations or in the open (or in a vehicle) within one hundred (100) feet of the described premises, consisting of the following unless otherwise specified in the Declarations or on the Your Business Personal Property Separation of Coverage form:

1)   Furniture and fixtures;

2)   Machinery and equipment;

3)   "Stock";

4)   All other personal property owned by you and used in your business;

5)   Labor, materials or services furnished or arranged by you on personal property of others; and

CP0010(Ed.07/88)                    Copyright, ISO Commercial Risk Services, Inc.
LX1012

A
I
G

O
L
0
0
3
:
S
e
s
s

1

9
/
1
/
2
0
1
6

      6)   Your use interest as tenant in improvements and betterments.  Improvements and betterments are fixtures, alterations, installations or additions:

         a)   Made a part of the building or structure you occupy but do not own; and

         b)   You acquire or made at your expense but cannot legally remove.

  c.   Personal Property of Others that is:

      1)   In your care, custody or control; and

      2)   Located in or on the building described in the Declarations or in the open (or in a vehicle) within one hundred (100) feet of the described premises.

    However, our payment for loss of or damage to personal property of others will only be for the account of the owner of the property.

2.   Property Not Covered

    Covered Property does not include:

  a.   Accounts, bills, currency, deeds, evidences of debt, money, notes or securities;

  b.   Animals, unless owned by others and boarded by you, or if owned by you, only as "stock" while inside of buildings;

  c.   Automobiles held for sale;

  d.   Bridges, roadways, walks, patios or other paved surfaces;

  e.   Contraband, or property in the course of illegal transportation or trade;

  f.   The cost of excavations, grading, backfilling or filling;

  g.   Foundations of buildings, structures, machinery or boilers if their foundations are below:

      1)   The lowest basement floor; or

      2)   The surface of the ground, if there is no basement;

  h.   Land (including land on which the property is located), water, growing crops or lawns;

  i.   Personal property while airborne or waterborne;

  j.   Pilings, piers, wharves or docks;

  k.   Property that is covered under another coverage form of this or any other policy in which it is more specifically described, except for the excess of the amount due (whether you can collect on it or not) from that other insurance;

  l.   Retaining walls that are not part of the building described in the Declarations;

  m.   Underground pipes, flues or drains;

  n.   The cost to research, replace or restore the information on valuable papers and records, including those which exist on electronic or magnetic media, except as provided in the Coverage Extensions;

  o.   Vehicles or self-propelled machines (including aircraft or watercraft) that:

      1)   Are licensed for use on public roads; or

      2)   Are operated principally away from the described premises.

        This paragraph does not apply to:

         a)   Vehicles or self-propelled machines or autos you manufacture, process or warehouse;

Copyright, ISO Commercial Risk Services, Inc.

A
I
G

O
L
0
0
3
:
S
e
s
s

1
9
/
1
/
2
0
1
6

      b)  Vehicles or self-propelled machines, other than autos, you hold for sale; or

      c)  Rowboats or canoes out of water at the described premises;

  p.  The following property while outside of buildings:

      1)  Grain, hay, straw or other crops;

      2)  Fences, radio or television antennas, including their lead-in wiring, masts or towers, signs (other than signs attached to buildings), trees, shrubs or plants, all except as provided in the Coverage Extensions.

**3.**  **Covered Causes of Loss**

See applicable Causes of Loss Form as shown in the Declarations.

**4.**  **Additional Coverages**

  a.  Debris Removal

      1)  We will pay your expense to remove debris of Covered Property caused by or resulting from a Covered Cause of Loss that occurs during the policy period. The expenses will be paid only if they are reported to us in writing within one hundred eighty (180) days of the earlier of:

         a)  The date of direct physical loss or damage; or

         b)  The end of the policy period.

      2)  The most we will pay under this Additional Coverage is 25% of:

         a)  The amount we pay for the direct physical loss of or damage to Covered Property; plus

         b)  The deductible in this policy applicable to that loss or damage.

      But this limitation does not apply to any additional debris removal limit provided in the Limits of Insurance section.

      3)  This Additional Coverage does not apply to costs to:

         a)  Extract "pollutants" from land or water; or

         b)  Remove, restore or replace polluted land or water.

  b.  Preservation of Property

      If it is necessary to move Covered Property from the described premises to preserve it from loss or damage by a Covered Cause of Loss, we will pay for any direct physical loss or damage to that property:

      1)  While it is being moved or while temporarily stored at another location; and

      2)  Only if the loss or damage occurs within ten (10) days after the property is first moved.

  c.  Fire Department Service Charge

      When the fire department is called to save or protect Covered Property from a Covered Cause of Loss, we will pay up to one thousand (1,000) dollars for your liability for fire department service charges:

      1)  Assumed by contract or agreement prior to loss; or

      2)  Required by local ordinance.

      No Deductible applies to this Additional Coverage.

  d.  Pollutant Clean Up and Removal

CP0010(Ed.07/88)          Copyright, ISO Commercial Risk Services, Inc.
LX1012

A
I
G

O
L
0
0
3
:
S
e
s
s

1

9
/
1
/
2
0
1
6

We will pay your expense to extract "pollutants" from land or water at the described premises if the release, discharge or dispersal of the "pollutants" is caused by or results from a Covered Cause of Loss that occurs during the policy period. The expenses will be paid only if they are reported to us in writing within one hundred eighty (180) days of the earlier of:

1)  The date of direct physical loss or damage; or

2)  The end of the policy period.

The most we will pay for each location under this Additional Coverage is ten thousand (10,000) dollars for the sum of all such expenses arising out of Covered Causes of Loss occurring during each separate twelve (12) month period of this policy.

5.  **Coverage Extensions**

Except as otherwise provided, the following Extensions apply to property located in or on the building described in the Declarations or in the open (or in a vehicle) within one hundred (100) feet of the described premises.

If a Coinsurance percentage of 80% or more, a Value Reporting period symbol, is shown in the Declarations, you may extend the insurance provided by this Coverage Part as follows:

a.  **Newly Acquired or Constructed Property**

1)  You may extend the insurance that applies to Building to apply to:

a)  Your new buildings while being built on the described premises; and

b)  Buildings you acquire at locations, other than the described premises, intended for:

i)  Similar use as the building described in the Declarations; or

ii)  Use as a warehouse.

The most we will pay for loss or damage under this Extension is 25% of the Limit of Insurance for Building shown in the Declarations, but not more than two hundred fifty thousand (250,000) dollars at each building.

2)  You may extend the insurance that applies to Your Business Personal Property to apply to that property at any location you acquire other than at fairs or exhibitions.

The most we will pay for loss or damage under this Extension is 10% of the Limit of Insurance for Your Business Personal Property shown in the Declarations, but not more than one hundred thousand (100,000) dollars at each building.

3)  Insurance under this Extension for each newly acquired or constructed property will end when any of the following first occurs:

a)  This policy expires;

b)  Thirty (30) days expire after you acquire or begin to construct the property; or

c)  You report values to us.

We will charge you additional premium for values reported from the date construction begins or you acquire the property.

b.  **Personal Effects and Property of Others**

You may extend the insurance that applies to Your Business Personal Property to apply to:

1)  Personal effects owned by you, your officers, your partners or your employees. This extension does not apply to loss or damage by theft.

2)  Personal property of others in your care, custody or control.

Copyright, ISO Commercial Risk Services, Inc.

CP0010(Ed.07/88)
LX1012

A
I
G

O
L
0
0
3
:
S
e
s
s

1

9
/
1
/
2
0
1
6

The most we will pay for loss or damage under this Extension is two thousand five hundred (2,500) dollars at each described premises. Our payment for loss of or damage to personal property of others will only be for the account of the owner of the property.

c.   Valuable Papers and Records - Cost of Research

You may extend the insurance that applies to Your Business Personal Property to apply to your costs to research, replace or restore the lost information on lost or damaged valuable papers and records, including those which exist on electronic or magnetic media, for which duplicates do not exist. The most we will pay under this Extension is one thousand (1,000) dollars at each described premises.

d.   Property Off-Premises

You may extend the insurance provided by this Coverage Form to apply to your Covered Property, other than "stock", that is temporarily at a location you do not own, lease or operate.  This Extension does not apply to Covered Property:

1)   In or on a vehicle;

2)   In the care, custody or control of your salespersons; or

3)   At any fair or exhibition.

The most we will pay for loss or damage under this Extension is five thousand (5,000) dollars.

e.   Outdoor Property

You may extend the insurance provided by this Coverage Form to apply to your outdoor fences, radio and television antennas, signs (other than signs attached to buildings), trees, shrubs and plants, including debris removal expense, caused by or resulting from any of the following causes of loss if they are Covered Causes of Loss:

1)   Fire;

2)   Lightning;

3)   Explosion;

4)   Riot or Civil Commotion; or

5)   Aircraft.

The most we will pay for loss or damage under this Extension is one thousand (1,000) dollars, but not more than two hundred fifty (250) dollars for any one tree, shrub or plant.

Each of these Extensions is additional insurance.  The Additional Condition, Coinsurance, does not apply to these Extensions.

B.   EXCLUSIONS

See applicable Causes of Loss Form as shown in the Declarations.

C.   LIMITS OF INSURANCE

The most we will pay for loss or damage in any one occurrence is the applicable Limit of Insurance shown in the Declarations.

The most we will pay for loss or damage to outdoor signs attached to buildings is one thousand (1,000) dollars per sign in any one occurrence.

The limits applicable to the Coverage Extensions and the Fire Department Service Charge and Pollutant Clean Up and Removal Additional Coverages are in addition to the Limits of Insurance.

Payments under the following Additional Coverages will not increase the applicable Limit of Insurance:

1.   Preservation of Property; or

CP0010(Ed.07/88)           Copyright, ISO Commercial Risk Services, Inc.
LX1012

AIG OLOO3:sess 19/1/2016

2. Debris Removal; but if:

    a. The sum of direct physical loss or damage and debris removal expense exceeds the Limit of Insurance; or

    b. The debris removal expense exceeds the amount payable under the 25% limitation in the Debris Removal Additional Coverage;

we will pay up to an additional five thousand (5,000) dollars for each location in any one occurrence under the Debris Removal Additional Coverage.

**D. DEDUCTIBLE**

We will not pay for loss or damage in any one occurrence until the amount of loss or damage exceeds the Deductible shown in the Declarations. We will then pay the amount of loss or damage in excess of the Deductible, up to the applicable Limit of Insurance.

**E. LOSS CONDITIONS**

The following conditions apply in addition to the Common Policy Conditions and the Commercial Property Conditions.

1. **Abandonment**

There can be no abandonment of any property to us.

2. **Appraisal**

If we and you disagree on the value of the property or the amount of loss, either may make written demand for an appraisal of the loss. In this event, each party will select a competent and impartial appraiser. The two appraisers will select an umpire. If they cannot agree, either may request that selection be made by a judge of a court having jurisdiction. The appraisers will state separately the value of the property and amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:

    a. Pay its chosen appraiser; and

    b. Bear the other expenses of the appraisal and umpire equally.

If there is an appraisal, we will still retain our right to deny the claim.

3. **Duties In The Event Of Loss Or Damage**

You must see that the following are done in the event of loss or damage to Covered Property:

    a. Notify the police if a law may have been broken.

    b. Give us prompt notice of the loss or damage. Include a description of the property involved.

    c. As soon as possible, give us a description of how, when and where the loss or damage occurred.

    d. Take all reasonable steps to protect the Covered Property from further damage by a Covered Cause of Loss. If feasible, set the damaged property aside and in the best possible order for examination. Also keep a record of your expenses for emergency and temporary repairs, for consideration in the settlement of the claim. This will not increase the Limit of Insurance.

    e. At our request, give us complete inventories of the damaged and undamaged property. Include quantities, costs, values and amount of loss claimed.

    f. Permit us to inspect the property and records proving the loss or damage.

Also permit us to take samples of damaged property for inspection, testing and analysis.

CP0010(Ed.07/88)
LX1012
Copyright, ISO Commercial Risk Services, Inc.

…

…

A
I
G

O
L
O
O
3
:
S
e
s
s

1
9
/
1
/
2
0
1
6

     g.     If requested, permit us to question you under oath at such times as may be reasonably required about any matter relating to this insurance or your claim, including your books and records. In such event, your answers must be signed.

     h.     Send us a signed, sworn statement of loss containing the information we request to investigate the claim. You must do this within sixty (60) days after our request. We will supply you with the necessary forms.

     i.     Cooperate with us in the investigation or settlement of the claim.

**4.**    **Loss Payment**

     a.     In the event of loss or damage covered by this Coverage Form, at our option, we will either:

         1)    Pay the value of lost or damaged property;

         2)    Pay the cost of repairing or replacing the lost or damaged property;

         3)    Take all or any part of the property at an agreed or appraised value; or

         4)    Repair, rebuild or replace the property with other property of like kind and quality.

     b.     We will give notice of our intentions within thirty (30) days after we receive the sworn statement of loss.

     c.     We will not pay you more than your financial interest in the Covered Property.

     d.     We may adjust losses with the owners of lost or damaged property if other than you. If we pay the owners, such payments will satisfy your claims against us for the owner's property. We will not pay the owners more than their financial interest in the Covered Property.

     e.     We may elect to defend you against suits arising from claims of owners of property. We will do this at our expense.

     f.     We will pay for covered loss or damage within thirty (30) days after we receive the sworn statement of loss, if:

         1)    You have complied with all of the terms of this Coverage Part; and

         2)    a) We have reached agreement with you on the amount of loss; or

             b) An appraisal award has been made.

**5.**    **Recovered Property**

If either you or we recover any property after loss settlement, that party must give the other prompt notice. At your option, the property will be returned to you. You must then return to us the amount we paid you for the property. We will pay recovery expenses and the expenses to repair the recovered property, subject to the Limit of Insurance.

**6.**    **Vacancy**

If the building where loss or damage occurs has been vacant for more than sixty (60) consecutive days before that loss or damage, we will:

     a.     Not pay for any loss or damage caused by any of the following even if they are Covered Causes of Loss:

         1)    Vandalism;

         2)    Sprinkler leakage, unless you have protected the system against freezing;

         3)    Building glass breakage;

CP0010(Ed.07/88)
LX1012

Copyright, ISO Commercial Risk Services, Inc.

A
I
G

O
L
O
O
3
:
S
e
s
s

1
9
/
1
/
2
0
1
6

    4)    Water damage;

    5)    Theft; or

    6)    Attempted theft.

b.    Reduce the amount we would otherwise pay for the loss or damage by 15%.

A building is vacant when it does not contain enough business personal property to conduct customary operations.

Buildings under construction are not considered vacant.

7.    Valuation

We will determine the value of Covered Property in the event of loss or damage as follows:

a.    At actual cash value as of the time of loss or damage, except as provided in b., c., d., e. and f. below.

b.    If the Limit of Insurance for Building satisfies the Additional Condition, Coinsurance, and the cost to repair or replace the damaged building property is two thousand five hundred (2,500) dollars or less, we will pay the cost of building repairs or replacement.

    This provision does not apply to the following even when attached to the building:

    1)    Awnings or floor coverings;

    2)    Appliances for refrigerating, ventilating, cooking, dishwashing or laundering; or

    3)    Outdoor equipment or furniture.

c.    "Stock" you have sold but not yet delivered at the selling price less discounts and expenses you otherwise would have had.

d.    Glass at the cost of replacement with safety glazing material if required by law.

e.    Tenant's Improvements and Betterments at:

    1)    Actual cash value of the lost or damaged property if you make repairs promptly.

    2)    A proportion of your original cost if you do not make repairs promptly. We will determine the proportionate value as follows:

        a)    Multiply the original cost by the number of days from the loss or damage to the expiration of the lease; and

        b)    Divide the amount determined in (a) above by the number of days from the installation of improvements to the expiration of the lease.

    If your lease contains a renewal option, the expiration of the renewal option period will replace the expiration of the lease in this procedure.

    3)    Nothing if others pay for repairs or replacement.

f.    Valuable Papers and Records, including those which exist on electronic or magnetic media (other than prepackaged software programs), at the cost of:

    1)    Blank materials for reproducing the records; and

    2)    Labor to transcribe or copy the records when there is a duplicate.

F.    ADDITIONAL CONDITIONS

CP0010(Ed.07/88)
LX1012

Copyright, ISO Commercial Risk Services, Inc.

The following conditions apply in addition to the Common Policy Conditions and the Commercial Property Conditions.

1.  **Coinsurance**

    If a Coinsurance percentage is shown in the Declarations, the following condition applies.

    a.  We will not pay the full amount of any loss if the value of Covered Property at the time of loss times the Coinsurance percentage shown for it in the Declarations is greater than the Limit of Insurance for the property.

        Instead, we will determine the most we will pay using the following steps:

        1)  Multiply the value of Covered Property at the time of loss by the Coinsurance percentage;

        2)  Divide the Limit of Insurance of the property by the figure determined in step (1);

        3)  Multiply the total amount of the covered loss, before the application of any deductible, by the figure determined in step (2); and

        4)  Subtract the deductible from the figure determined in step (3).

        The amount determined in step (4) is the most we will pay. For the remainder, you will either have to rely on other insurance or absorb the loss yourself.

        Example No. 1 (Underinsurance):

        | When: | The value of the property is | $250,000 |
        |---|---|---|
        | | The Coinsurance percentage for it is | 80% |
        | | The Limit of Insurance for it is | $100,000 |
        | | The Deductible is | $250 |
        | | The amount of loss is | $40,000 |

        Step (1):  $250,000 x 80% = $200,000 (the minimum amount of insurance to meet your Coinsurance requirements)

        Step (2):  $100,000 divided by $200,000 = .50

        Step (3):  $40,000 x .50 = $20,000

        Step (4):  $20,000 - $250 = $19,750

        We will pay no more than $19,750. The remaining $20,250 is not covered.

        Example No. 2 (Adequate Insurance):

        | When: | The value of the property is | $250,000 |
        |---|---|---|
        | | The Coinsurance percentage for it is | 80% |
        | | The Limit of Insurance for it is | $200,000 |
        | | The Deductible is | $250 |
        | | The amount of loss is | $40,000 |

        Step (1):  $250,000 x 80% = $200,000 (the minimum amount of insurance to meet your Coinsurance requirements)

        Step (2):  $200,000 divided by $200,000 = 1.00

        Step (3):  $40,000 x 1.00 = $ 40,000

Copyright, ISO Commercial Risk Services, Inc.

CP0010(Ed.07/88)
LX1012

A
I
G

O
L
O
O
3
:
S
e
s
s

1
9
/
1
/
2
0
1
6

Step (4):   $40,000 - $250 = $ 39,760

We will cover the $39,750 loss in excess of the Deductible.  No penalty applies.

b.   If one Limit of Insurance applies to two or more separate items, this condition will apply to the total of all property to which the limit applies.

Example No. 3:

| When: | The value of property is: | |
|---|---|---|
| | Building at Location No. 1 | $75,000 |
| | Building at Location No. 2 | $100,000 |
| | Personal Property at Location No. 2 | $75,000 $250,000 |
| | The Coinsurance percentage for it is | 90% |
| | The Limit of Insurance for Buildings and Personal Property | |
| | at Location Nos. 1 and 2 is | $180,000 |
| | The Deductible is | $1,000 |
| | The amount of loss is Building at Location No. 2 | $30,000 |
| | Personal Property at Location No. 2. | $20,000 $50,000 |

Step (1):   $250,000 x 90%  =  $225,000  (the minimum amount of insurance to meet your Coinsurance requirements and to avoid the penalty shown below)

Step (2):   $180,000 divided by $225,000 =  .80

Step (3):   $50,000 x .80 = $40,000

Step (4):   $40,000 - $1,000 = $39,000

We will pay no more than $39,000. The remaining $11,000 is not covered.

2.   Mortgage Holders

a.   The term "mortgage holder" includes trustee.

b.   We will pay for covered loss of or damage to buildings or structures to each mortgage holder shown in the Declarations in their order of precedence, as interests may appear.

c.   The mortgage holder has the right to receive loss payment even if the mortgage holder has started foreclosure or similar action on the building or structure.

d.   If we deny your claim because of your acts or because you have failed to comply with the terms of this Coverage Part, the mortgage holder will still have the right to receive loss payment if the mortgage holder:

1)   Pays any premium due under this Coverage Part at our request if you have failed to do so;

2)   Submits a signed, sworn statement of loss within sixty (60) days after receiving notice from us of your failure to do so; and

3)   Has notified us of any change in ownership, occupancy or substantial change in risk known to the mortgage holder.

All of the terms of this Coverage Part will then apply directly to the mortgage holder.

e.   If we pay the mortgage holder for any loss or damage and deny payment to you because of your acts or because you have failed to comply with the terms of this Coverage Part

Copyright, ISO Commercial Risk Services, Inc.
CP0010(Ed.07/88)
LX1012

AIG

OLOO3:Sess

19/11/2016

    1)   The mortgage holder's rights under the mortgage will be transferred to us to the extent of the amount we pay; and

    2)   The mortgage holder's right to recover the full amount of the mortgage holder's claim will not be impaired.

    At our option, we may pay to the mortgage holder the whole principal on the mortgage plus any accrued interest. In this event, your mortgage and note will be transferred to us and you will pay your remaining mortgage debt to us.

  **f.**   If we cancel this policy, we will give written notice to the mortgage holder at least:

    1)   Ten (10) days before the effective date of cancellation if we cancel for your non-payment of premium; or

    2)   Thirty (30) days before the effective date of cancellation if we cancel for any other reason.

  **g.**   If we elect not to renew this policy, we will give written notice to the mortgage holder at least ten (10) days before the expiration date of this policy.

**G.  OPTIONAL COVERAGES**

If shown in the Declarations, the following Optional Coverages apply separately to each item.

**1.  Agreed Value**

  **a.**   The Additional Condition, Coinsurance, does not apply to Covered Property to which this Optional Coverage applies. We will pay no more for loss of or damage to that property than the proportion that the Limit of Insurance under this Coverage Part for the property bears to the Agreed Value shown for it in the Declarations.

  **b.**   If the expiration date for this Optional Coverage shown in the Declarations is not extended, the Additional Condition, Coinsurance, is reinstated and this Optional Coverage expires.

  **c.**   The terms of this Optional Coverage apply only to loss or damage that occurs:

    1)   On or after the effective date of this Optional Coverage; and

    2)   Before the Agreed Value expiration date shown in the Declarations or the policy expiration date, whichever occurs first.

**2.  Inflation Guard**

  **a.**   The Limit of Insurance for property to which this Optional Coverage applied will automatically increase by the annual percentage shown in the Declarations.

  **b.**   The amount of increase will be:

    1)   The Limit of Insurance that applied on the most recent of the policy inception date, the policy anniversary date, or any other policy change amending the Limit of Insurance, times

    2)   The percentage of annual increase shown in the Declarations, expressed as a decimal (example: 8% is .08), times

    3)   The number of days since the beginning of the current policy year or the effective date of the most recent policy change amending the Limit of Insurance, divided by 365.

    Example:

| | | |
|---|---|---|
| If: | The applicable Limit of Insurance is | $100,000 |
| | The annual percentage increase is | 8% |
| | The number of days since the beginning of the policy year (or last policy change) is | 146 |

Copyright, ISO Commercial Risk Services, Inc.

A
I
G

O
L
0
0
3
:
S
e
s
s

1
9
/
1
/
2
0
1
6

The amount of increase is $100,000 x .08 x 146 divided by 365 =                                $3,200

3.   Replacement Cost

   a.   Replacement Cost (without deduction for depreciation) replaces Actual Cash Value in the Loss Condition, Valuation, of this Coverage Form.

   b.   This Optional Coverage does not apply to:

      1)   Property of others;

      2)   Contents of a residence;

      3)   Manuscripts;

      4)   Works of art, antiques or rare articles, including etchings, pictures, statuary, marbles, bronzes, porcelains and bric-a-brac; or

      5)   "Stock," unless the Including "Stock" option is shown in the Declarations.

   c.   You may make a claim for loss or damage covered by this insurance on an actual cash value basis instead of on a replacement cost basis. In the event you elect to have loss or damage settled on an actual cash value basis, you may still make a claim for additional coverage this Optional Coverage provides if you notify us on your intent to do so within one hundred eighty (180) days after the loss or damage.

   d.   We will not pay on a replacement cost basis for any loss or damage:

      1)   Until the lost or damaged property is actually repaired or replaced; and

      2)   Unless the repairs or replacement are made as soon as reasonably possible after the loss or damage.

   e.   We will not pay more for loss or damage on a replacement cost basis than the least of:

      1)   The Limit of Insurance applicable to the lost or damaged property;

      2)   The cost to replace, on the same premises, the lost or damaged property with other property:

         a)   Of comparable material and quality; and

         b)   Used for the same purpose; or

      3)   The amount you actually spend that is necessary to repair or replace the lost or damaged property.

H.   DEFINITIONS

1.   "Pollutants" means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

2.   "Stock" means merchandise held in storage or for sale, raw materials and in-process or finished goods, including supplies used in their packing or shipping.

Copyright, ISO Commercial Risk Services, Inc.

CP0010(Ed.07/88)
LX1012

A
I
G

O
L
O
0
3
:
S
e
s
s

1
9
/
1
/
2
0
1
6

**ENDORSEMENT**

This endorsement, effective 12:01 AM 05/01/2014

Forms a part of policy no.:  019946713

Issued to: COASTAL TRANSPORT CO, INC.

By: LEXINGTON INSURANCE COMPANY

**EARTHQUAKE ENDORSEMENT**

1.  In consideration of an additional premium of  INCLUDED      , it is understood and agreed that Paragraph B. EXCLUSIONS, Item b. Earth Movement, of CAUSES OF LOSS - SPECIAL FORM CP 1030 is amended as follows.

    b.   Earth Movement

        1)   Any earth movement (other than sinkhole collapse and earthquake), such as land-slide , or earth sinking, rising or shifting. But if loss or damage by fire or explosion results, we will pay for that resulting loss or damage.

    and special Limits of Liability and a special deductible are added as follows:

    A.   LIMITS OF LIABILITY: The liability of the Company for loss or damage caused by earthquake and volcanic eruption shall not exceed the sum of  2,210,000      , for loss or damage at any one insured location. Notwithstanding the limit of liability stated herein, if any, liability shall not exceed the sum of 2,210,000       due to any one earthquake or volcanic eruption loss nor shall it exceed the sum of  2,210,000      in any one year period or policy period, whichever is less, commencing 05/01/2014 .

    B.   DEDUCTIBLE: The sum of  50,000      shall be deducted from any adjusted claim due to earthquake or volcanic eruption.

2.  Each loss by earthquake or volcanic eruption shall constitute a single claim hereunder; provided that if more than one earthquake shock or volcanic eruption shall occur within any period of 72 hours during the term of this endorsement, such shocks shall be considered to constitute a single earthquake or volcanic eruption.

3.  If the coverage of the policy to which this endorsement is attached includes both Property Damage and Business Interruption, the foregoing limits shall be the maximum amounts collectible under this policy for loss or damage resulting from the peril described in Paragraph 1. A. above, regardless of whether the loss involves Property Damage alone or both Property Damage and Business Interruption.

*Erik P. Nill*

Authorized Representative OR
Countersignature (in states where applicable)

PR9025 (09/92)
LX1153

A
I
G

O
L
0
0
3
:
S
e
s
s

1

9
/
1
/
2
0
1
6

# EXHIBIT B



*August 13, 2014*

AIG Commercial Property
Claims
4251 FM 2181
Suite 230, #203
Corinth, TX 76210
www.aig.com

Glenn Hollmuller
*Executive General Adjuster*
*Commercial Property Claims*
T  (940) 279-1103
F. (844) 435-1683
glenn.hollmuller@aig.com

## VIA CERTIFIED MAIL, RETURN RECEIPT REQUESTED

Patsy R. Mosel
HR-Claims
Coastal Transport Co., Inc.
1603 Ackerman Road
San Antonio, TX 78219

Re:  Insured:        Coastal Transport Co., Inc.
     Claim no.:      9702809326US
     Loss Location:  1733 & 1733A E Hwy 80, Abilene, TX
     Policy:         019946713
     Insurer:        Lexington Insurance Company
     Date of Loss:   6/12/2014

Dear Ms Mosel:

Thank you for the opportunity to provide service for the above referenced claim.  I am an Executive General Adjuster with the Property Claims Department of AIG Claims, Inc., which is authorized to handle the referenced matter on behalf of Lexington Insurance Company.  I am writing in response to the request of Coastal Transport Co., Inc. for coverage under Lexington Insurance Company policy no. 019946713 in connection with the referenced claim which involves interior water damage and hail damage to the buildings at the referenced location.

I investigated the loss and inspected the property at 1733 & 1733A E Hwy 80, Abilene, TX on July 15, 2014.  At that time I met with Mr. Brian Lancaster, the Assistant Terminal Manager.  I confirmed some hail damage to the two buildings and noted evidence of water entry.  The water entry at 1733A (the office building) was significant in the center of the building, however no penetration on the roof could be found.  During my inspection Coastal Transport Co. staff indicated that the flat roof of building of 1733A often pools water and has done so for some time.

In order to further assess the source of the leak, we re-inspected both buildings with the assistance of Mr. Kevin Kiddell, Senior Consultant with Unified Building Sciences, Inc. on July 21, 2014.  At that time, we met with Mr. Danny English, the Terminal Manager.  UBS confirmed my initial

1



findings of minor hail damage to both buildings. In addition, UBS concludes that the interior leaks at 1733A were caused by a deflection in the decking in the middle of the roof where standing water ponds for an extended period of time allowing water to migrate into the building envelope. The interior water damage was not caused by hail.

The policy of insurance provides coverage for all risk of physical loss and damage subject to all terms, conditions, limits and sub-limits where applicable. However, the policy also includes Exclusions for wear and tear, deterioration and inadequate maintenance as well as Limitations for water damage to the interior of buildings.

This is to confirm that we have reviewed the damages and the policy language and have concluded that we can assist you with repairs to the buildings due to hail. However, we must respectfully deny the portion of the claim that resulted from long term wear and tear, standing water and deferred maintenance on the roof of 1733A. The resulting interior water damage is also not covered.

Please refer to your Policy #019946713, Causes of Loss – Special Form, CP1030 (07/88), pages 1-5 of 7 which states:

B. EXCLUSIONS

...

2. We will not pay for loss or damage caused by or resulting from any of the following:

...

    d.    1) Wear and tear;
          2) Rust, corrosion, fungus, decay, deterioration, hidden or latent defect or any quality in property that causes it to damage or destroy itself;

...

          4) Settling, cracking, shrinking or expansion;

...

3. We will not pay for loss or damage caused by or resulting from any of the following. But if loss or damage by a Covered Cause of Loss results, we will pay for that resulting loss or damage.

2



A
I
G

O
L
0
0
3
:
S
e
s
s

1

9
/
1
/
2
0
1
6

...

    c.     Faulty, inadequate or defective:

           2) Design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction;
           3) Materials used in repair, construction, renovation or remodeling; or
           4) Maintenance;

...

## C. LIMITATIONS

1. We will not pay for loss of or damage to:

...

    c. The interior of any building or structure caused by or resulting from rain, snow, sleet, ice, sand or dust, whether driven by wind or not, unless:

    1)  The building or structure first sustains damage by a Covered Cause of Loss to its roof or walls through which the rain, snow, sleet, ice, sand or dust enters; or
    2)  The loss or damage is caused by or results from thawing of snow, sleet or ice on the building or structure.

As previously stated, our investigation confirms that we are able to assist you with damages specific to hail. Your covered claim summarizes as follows.

| | |
|---|---|
| $ 3,371.20 | · Roof repairs specific to hail (office) |
| $ 12,847.11 | · Roof repairs due to hail (warehouse) |
| $ 10,822.38 | · Exterior repairs due to hail (warehouse) |
| $ 785.56 | · Interior damages from hail (warehouse) |
| $27,826.25 | · Estimated gross loss |
| <$5,000.00> | · Deductible |
| $22,826.25 | · Net Claim Payable |

3



AIG OL003:sess19/1/2016

I have included an estimate, a Statement of Loss and the report from Unified Building Sciences for your records.  If you should have additional information to present or have any questions or remaining issues, please contact me at your convenience.

If you have any information that you believe would alter our coverage position concerning this matter, please forward it to us for further evaluation.  We will review that information without prejudice to this partial denial, which denial remains effective unless we notify you in writing of a change in our position.  This letter is not, and should not be construed as, a waiver of any terms, conditions, exclusions or other provisions of the policy, or any other policies of insurance issued by Lexington Insurance Company.  Lexington Insurance Company expressly reserves all of its rights under the policy, including the right to amend the above disclaimer to include any additional grounds for disclaimer of coverage, including but not limited to those set forth above.  All rights are reserved.

Best Regards,

*Glenn Hollmuller*
*Executive General Adjuster*
*Lexington Insurance Company*

C: *Jodi Neal, CIC, CRIS, TRS*
   *HUB International Transportation Insurance Services*
   *10701 Corporate Drive*
   *Suite 246*
   *Stafford TX  77477*

## UPS CampusShip: View/Print Label

1. **Ensure there are no other shipping or tracking labels attached to your package.** Select the Print button on the print dialog box that appears. Note: If your browser does not support this function select Print from the File menu to print the label.

2. **Fold the printed label at the solid line below.** Place the label in a UPS Shipping Pouch. If you do not have a pouch, affix the folded label using clear plastic shipping tape over the entire label.

3. **GETTING YOUR SHIPMENT TO UPS**
   **Customers with a Daily Pickup**
   Your driver will pickup your shipment(s) as usual.

   **Customers without a Daily Pickup**
   Take your package to any location of The UPS Store®, UPS Access Point(TM) location, UPS Drop Box, UPS Customer Center, UPS Alliances (Office Depot® or Staples®) or Authorized Shipping Outlet near you. Items sent via UPS Return Services(SM) (including via Ground) are also accepted at Drop Boxes. To find the location nearest you, please visit the Resources area of CampusShip and select UPS Locations.
   Schedule a same day or future day Pickup to have a UPS driver pickup all your CampusShip packages.
   Hand the package to any UPS driver in your area.

| UPS Access Point™ | UPS Access Point™ | UPS Access Point™ |
|---|---|---|
| TANGS FURNITURE | THE UPS STORE | THE UPS STORE |
| 100 BEACH ST | 71 COMMERCIAL ST | 198 TREMONT ST |
| BOSTON ,MA 02111 | BOSTON ,MA 02109 | BOSTON ,MA 02116 |

FOLD HERE

